THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH WOOLSEY, Defendant-Appellant.

(No. 73-241; )

Fifth District—January 6, 1975.

Robert Farrell, of Mt. Vernon, and Steven Clark, of Chicago, both of State Appellate Defender's Office, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish of Statewide Appellate Assistance Service, and Raymond F. Buckley, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The defendant, Kenneth Woolsey, was convicted after a bench trial in the Circuit Court of Madison County of the crime of burglary, and he was sentenced to the Department of Corrections for a term of 2 to 6 years.

The only issue on appeal raised by the defendant is that he did not enter the building "without authority" when he used a key given to him by his employer to enter his place of employment. Consequently, he contends that he was not guilty of burglary.

There is little dispute as to what happened on August 23, 1972, in

Alton, Illinois, to the property of Gersman and Company Roofers. The case for the prosecution consisted of the testimony of Orville Gersman, president and majority stockholder of Gersman and Company, Detective Parker and Officer Rinders of the Alton Police Department, and a co-participant by the name of Ronald Blasingim. Some pictures of one of Gersman's trucks taken at the time of the arrest of defendant were admitted into evidence. The defendant did not testify, and Walter Lawrence, a former employee of Gersman and Company, was the only witness for the defense.

We believe that the State proved beyond a reasonable doubt that the defendant acted without authority in entering the building, and the judgment and sentence of the Circuit Court of Madison County is to be affirmed.

Orville Gersman, the first witness for the prosecution, testified that the defendant, Blasingim, and one other man were employees of his firm and that the defendant had a key to the warehouse-office, which would admit him to all parts of the building. On the day in question, all employees, after reporting to their assigned jobs, returned to the warehouse in the middle of the morning because of rain. Gersman "locked up" between 4:30 and 5:00 P.M. and went home. He further testified that the workers had no authority to use the keys outside of the "normal course of business hours." At about 1:30 A.M. the next day Gersman was notified that one of his trucks, a Chevy van, was on a country road, and after failing to locate it, he called the police. Several hours later, in response to a call, Gersman went to the Alton police station and identified the Chevy van and also another truck that had been taken the same night. All of the items taken with the trucks from the warehouse were recovered.

On cross-examination, Gersman testified that defendant had authority to use the truck during business hours, but not the van. He also stated that if the workers did work past closing time, then they would have authority to enter the building to return the truck or materials. On redirect, he again stated that the defendant had no authority to enter the building after hours or take either truck.

Detective John Parker of the Alton Police Department testified that, after the defendant was given the "*Miranda*" warnings, he told Parker that a roofer named Stamm and he met at a tavern during the afternoon of the day in question. Stamm later agreed to buy two loads of material for $250 from the defendant, and he then took a truckload of material to Stamm's house. This meeting with Stamm took place after a coworker, Blasingim, and he did some drinking in several taverns. After the material was unloaded, the defendant drove the truck to a country road where it was abandoned. He was picked up by Stamm and

a fellow roofer named Blasingim, and the three of them returned to Alton. Defendant admitted to Parker that he had gone back to Gersman's warehouse and was picked up by the police after driving the second truck away from the building. He also confessed that he delivered to Stamm all the stolen items that were later recovered from the Stamm residence. On cross-examination, Detective Parker stated that Stamm was not charged because he gave the original information that a crime was to be committed.

The third witness for the prosecution was Officer Rinders, who set up a "stake-out" near Gersman's warehouse. About 9:30 P.M. on August 23, 1972, a man walked across the street in front of Rinders' patrol car toward the warehouse, and 15 minutes later a truck drove out from behind the warehouse and onto the street. After a short chase, the truck was stopped and Rinders arrested the driver of the truck, who was the defendant. Rinders stayed with the truck until the defendant was booked and then took pictures of the truck, which were admitted into evidence at the trial. On cross-examination, Rinders stated that he did not and could not see the truck actually leave the warehouse but testified that no other access to the driveway around Gersman's building existed. He also mentioned that at the beginning of the "stake-out" he had driven around the building and saw that no trucks were on the outside.

The last witness for the State was coparticipant Blasingim. His story of the events that took place on August 23, 1972, was practically the same as the statement the defendant gave to Detective Parker. After drinking in the afternoon, Blasingim and the defendant met Stamm in a tavern, where a deal was made for the roofing material. The defendant and Blasingim went to the warehouse about 6 or 6:30 P.M. and entered with the defendant's key. They loaded a van with material and equipment which was delivered to Stamm's house. The two of them abandoned the van on a country road, and Stamm drove the others back to Alton. Blasingim went home and was arrested the next day on his way to work at Gersman and Company.

On cross-examination, Blasingim revealed that he had pled guilty to burglary and had received 2 years' probation without a promise to testify. He also testified that during the month of the burglary, he and the defendant had worked after 5 P.M., but never after dark. On such occasions, they would use defendant's key to put the truck away. On redirect examination, Blasingim stated that he never had reason to be in the warehouse after dark and had no permission to be there after dark.

The defense offered one witness, a Walter Lawrence, who had worked for Gersman and Company for a few months prior to the incident. He

stated that he possessed a key to the warehouse, and on his return from a job, he would enter the building to load the trucks for the next day's work. On cross-examination, Lawrence admitted that he was never authorized to enter the building when not working.

A motion for directed verdict was denied and the defendant was found guilty.

Defendant's reasoning is that had he been working his regular shift on the date in question, his authority to enter Gersman's building would be unquestioned. Thus, the only factor which negated his authority was his intent to commit theft. Defendant also contends in his brief that allowing the intent, itself an essential element of the offense, to negate authority renders the "without authority" portion of the statute meaningless. He also contends that, if this is the case, any shoplifting would be burglary since the intent to commit theft would negate the otherwise authorized entrance of a store open to the public.

■■ The law has been clearly developed against the defendant on this point. In *People v. Weaver*, 41 Ill.2d 434, 439, the court said:

> "But authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open * * *. An entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat."

This court in *People ex rel. McLain v. Housewright*, 9 Ill.App.3d 803, 805-06, with reference to the above statement stated that a contrary result would be "contrary to reason and ordinary human understanding." In addition, the *Housewright* case held that, since "intent to commit a theft" necessarily implies "without authority", the latter phrase need not be included in the indictment.

■■ The question remains whether defendant's possession of a key gave him some greater measure of authority to enter the warehouse, which must be disproved by the State. In Annot., 93 A.L.R.2d 531, 537 (1964), it is said:

> "While unlimited consent to enter is always a defense against a charge of burglary at common law or under statutes which include in the definition of the offense breaking and entering or the use of force in the entry, a consent limited as to place, time, or purpose is not a defense where entry occurs outside the limitations stated or implied."

The evidence in the instant case does support the conclusion that defendant's authority to enter the Gersman and Company building was limited to those occasions—both time and purpose—where necessary to

further the employee's activities. The State proved beyond a reasonable doubt that defendant acted without authority.

The sentence the defendant received is not excessive in light of the past record of the defendant. This record was brought to the trial court's attention as the result of an extensive hearing in aggravation and mitigation.

The judgment and sentence of the Circuit Court of Madison County are affirmed.

Judgment affirmed.

G. MORAN, P. J., and EBERSPACHER, J., concur.