THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID HEPLER, Defendant-Appellant.

Second District   No. 84—0021

Opinion filed April 26, 1985.

Paul E. Gaziano, of Liebovich & Gaziano, of Rockford, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Following a jury trial in the circuit court of Stephenson County, defendant David Hepler was convicted of robbery, residential burglary, burglary, aggravated battery, and felony-murder (based on the commission of the underlying forcible felonies of residential burglary or robbery). (Ill. Rev. Stat. 1983, ch. 38, pars. 18—1, 19—1, 19—3, 12—4, 9—1(3).) He received sentences of 20 years for murder, 12 years for residential burglary, seven years for robbery, five years for burglary, and five years for aggravated battery, all to run concurrently. He was found not guilty of home invasion. (Ill. Rev. Stat. 1983, ch. 38, par. 12—11.) On appeal from the denial of his post-trial motion for a new trial, defendant contends that: (1) the evidence was insufficient to establish his guilt of any of these offenses; and (2) the trial court erred in permitting the State's pathologist to opine as to the cause of death, since this opinion improperly assumed a fact not in evidence, namely, the existence of a stressful event. We reverse.

On Sunday, January 30, 1983, at approximately 1:30 p.m., Isabel Bangasser, an 80-year-old widow residing at 1205 South Maple in Freeport, was found dead of cardiovascular failure in the living room of her home. She was discovered sitting on the floor with her back leaning against the couch. There was no evidence of a forced entry or a struggle; however, Mrs. Bangasser's engagement and wedding rings were missing from her hand, and a ring of keys, which was usually kept on a keyboard in the kitchen, was missing. Mrs. Bangasser's purse was on an end table in the living room; her billfold was found on a step leading to the second floor of the home. Her glasses were discovered behind a pillow on the sofa. Currency located at various places in the house was not disturbed.

An investigation into Mrs. Bangasser's death revealed that on January 29, 1983, the evening prior to her death, she attended Mass with neighbors from 5:30 to 6:30 p.m. and was wearing her rings at that time. After Mass, Mrs. Bangasser drove her neighbors home and then went to visit her daughter, Dorothy Weist, from 6:30 p.m. until about 9 p.m. Mrs. Weist noticed no unusual marks or bruises on her mother's hands that evening.

On the morning of her death, at around 8:30 a.m., 11-year-old Matt Goebel went to Mrs. Bangasser's house to shovel her sidewalks and driveway. After completing the job, the boy knocked on the door

but no one answered. He returned later that morning between 10 and 10:30 a.m. This time Mrs. Bangasser answered the door and paid Matt for his work.

At 11 a.m. on January 30, 1983, a neighbor, Dennis Goethe, was watching television when his dog, which was tied up outside, began barking incessantly. After several minutes, Goethe went outside to investigate the situation. He observed someone, whom he later identified at trial as defendant, standing by Mrs. Bangasser's garage sorting through a set of keys. After watching this man for two to three minutes, Mr. Goethe telephoned Mrs. Bangasser, but no one answered the telephone. Goethe returned to the door and saw the man in Mrs. Bangasser's dark green Plymouth Horizon backing down her driveway. When the car disappeared, Goethe resumed watching television.

At approximately 1:30 p.m. that day Mel and Dorothy Weist went to Mrs. Bangasser's home to pick her up for her 80th birthday party. When they pulled into the driveway, they noticed that a light was on above the garage. After waiting awhile for her mother to come out, Mrs. Weist attempted to unlock the front door, but had difficulty doing so. A subsequent attempt by Mr. Weist to unlock the door was successful. The door had apparently been double-locked, although Mrs. Weist testified that in the 28 years she had lived in the house this double lock was never used. Upon entering the house, the Weists discovered Mrs. Bangasser and the house in the condition previously described. A police search of the house revealed no rings or keys. Also, no fingerprints were discovered on the premises.

The body was examined at the scene by Stephenson County Coroner Richard Cramer. No unusual circumstances were noted, and the body was released to the funeral home, where it was embalmed. A second examination by the coroner at the funeral home revealed several finger-shaped bruises on the deceased's right forearm and a small laceration towards the wrist. Following these findings an autopsy was conducted; however, the cause of death was found to be "undetermined." Mrs. Bangasser was subsequently buried.

Meanwhile, in the early morning hours of January 31, 1983, defendant was discovered traveling northbound just outside Beloit, Wisconsin. At that time and place, he was placed under arrest for driving under the influence of alcohol. Defendant was driving Mrs. Bangasser's dark green Plymouth Horizon and had had an accident in the vehicle. Upon questioning, defendant stated that the car belonged to his grandmother and that he was on his way back home to Freeport from a party in Beloit, although Freeport is located south-

west of Beloit. Chemical tests conducted at the Beloit police station revealed that defendant's alcohol level was not high enough to sustain a charge for DUI, and defendant was released on that charge.

On January 31, 1983, at approximately 6:15 p.m., Detective Hannan of the Freeport police department went to the Hepler residence to question defendant, who had since returned from Wisconsin. Detective Hannan requested that defendant come to the police station to answer some questions. The defendant was not under arrest at that time, and he was accompanied to the station by his parents. After being advised of his *Miranda* rights, defendant gave a statement regarding his whereabouts on the morning of January 30, 1983. In the statement, defendant admitted that he went to Isabel Bangasser's house at approximately 10 a.m. that day; however, he denied having committed the offenses in question and also denied that he had ever been in Mrs. Bangasser's car. During the interview, Detective Hannan noticed a large bruise on defendant's right hand, which defendant stated he had received the previous Saturday when he brushed his hand against a doorway.

On February 1, 1983 (Tuesday), Freeport police received an anonymous call directing them to the intersection of Homer and Cherry streets in Freeport, where they found Mrs. Bangasser's automobile. According to a nearby resident, the car had been there since Monday evening, but was not there Sunday evening. The vehicle was removed to the police department, and a subsequent search of it revealed a gold key with tape which had initials on it and a latent fingerprint on the glass on the inside passenger door. The key was later found to fit the emergency release lock on the Bangasser garage door, and the fingerprint was identified as defendant's.

Police again questioned defendant on February 10, 1983, regarding his whereabouts on January 30 and 31, 1983. During this second period of questioning, defendant stated he was in Monroe, Wisconsin, and had gotten into a fight with a man who had driven him there. The police then informed him that they could prove that he was in Mrs. Bangasser's car, and defendant responded, "You'll just have to prove it."

After learning of the suspicious circumstances surrounding Mrs. Bangasser's death, the body was exhumed and another autopsy was performed, this time by Dr. Robert Stein, the Cook County medical examiner. Also present during this autopsy were Dr. Roh, the hospital pathologist who performed the original autopsy, and Dr. Rouse, the defendant's medical expert. External examination revealed several elongated bruises on the right forearm and a large bruised area on

the right upper arm, which Dr. Stein concluded were caused prior to death. Internal examination revealed some arteriosclerotic changes in the heart. According to Dr. Stein, these findings, without any further history or knowledge of the surrounding circumstances, were inconclusive as to cause of death. Dr. Stein was then given a lengthy hypothetical, objected to by defendant, in which he was asked to assume the circumstances in evidence. On the basis of the facts so assumed, Dr. Stein opined that fright was the initiating factor that resulted in cardiovascular failure. He also stated that due to the fact that Mrs. Bangasser had already been embalmed, he was unable to conduct a toxicology test upon her body. Regarding the elongated bruises, Dr. Stein stated that he could not think of an instrument that could have inflicted the bruises because they were "too uniform and too parallel."

Testifying in defendant's behalf was Rev. Karl Hepler, a neighbor of Mrs. Bangasser and defendant's father. Rev. Hepler testified that on Sunday, January 30, 1983, defendant was at home when he and his wife left for church around 9 a.m. Defendant was also at home when the Reverend returned home from church around noon. The witness learned of Mrs. Bangasser's death around 2 p.m. that day; his son was still in the house at that time. However, defendant left the house later that afternoon and did not return. The witness did not know where defendant was between the hours of 9 a.m. and noon on Sunday.

Dr. Rouse, also testifying for the defense, reviewed the findings in the two autopsies which were performed, as well as some of the medical reports of Dr. Clark, Mrs. Bangasser's personal physician. Dr. Rouse stated that Dr. Roh's findings in the initial autopsy report, particularly the presence of mononuclear cell infiltrates, indicated that Mrs. Bangasser had had a cardiac event within days of her death. Dr. Clark's notes also indicated that at the time of her death, Mrs. Bangasser was being treated for mild to moderate hypertension. Regarding the theory of reflex death, Dr. Rouse stated that in the majority of such cases, there would be evidence of "contraction band necrosis" in the heart muscle, indicating the presence of adrenaline. However, no findings regarding contraction band necrosis were documented in the instant case. Finally, Dr. Rouse conceded that a pathologist must have a full and complete investigation before an opinion could be rendered on whether reflex death has occurred in a given case.

In rebuttal to Rev. Hepler's testimony, Rev. John Hollis testified that on Sunday, January 30, 1983, at approximately noon, he was

walking from his church to the parsonage when he observed a dark green Plymouth Horizon automobile in the parking lot. Several hours later, between 2:30 and 3 p.m., Rev. Hollis was looking onto the parking lot through the parsonage windows when he observed a young man in the Plymouth. The car then pulled out of the parking lot. The parking lot was three to four blocks away from the Bangasser residence.

Defendant contends that this evidence was insufficient to prove him guilty beyond a reasonable doubt of the offenses of which he stands convicted. The parties apparently agree that the evidence in the instant case is entirely circumstantial and thus every reasonable hypothesis of innocence must be excluded before the defendant may be found guilty of the instant offenses. (*People v. Deatherage* (1984), 122 Ill. App. 3d 620, 624, 461 N.E.2d 631.) It is essential to a conviction upon circumstantial evidence that the facts proved be not only consistent with the accused's guilt, but that they be inconsistent, upon any reasonable hypothesis, with his innocence. *People v. Scribner* (1982), 108 Ill. App. 3d 1138, 1143, 440 N.E.2d 160.

■■ With respect to the crime of residential burglary, defendant contends that there was insufficient evidence to prove that he entered the house or, if he did, that he did so without authority. (See Ill. Rev. Stat. 1983, ch. 38, par. 19—3.) Rather, he argues that the lack of evidence showing a forceful entry tends to suggest that the defendant, if he was present, was there with authority. Similarly, with respect to the offense of burglary of the garage, defendant argues that there was a lack of evidence indicating that he entered without Mrs. Bangasser's authority.

The fact that there was an entry into the house was demonstrated by several "unusual" circumstances tending to indicate that someone other than Mrs. Bangasser was present in her home on the morning of her death. The door leading from the house onto the rear pantry was found locked, although it had a history of always being open and unlocked whenever Mrs. Bangasser was inside. The skeleton key, which was always left in the keyhole of that door, was missing. The dining room drapes inside the house were drawn when Mrs. Weist came to pick up her mother at 1:30 p.m.; however, Mrs. Weist testified that the only time those drapes were ever closed was late in the evening to keep out the western sun. The front door was double-locked, although according to Mrs. Weist this lock was never used. Someone had attempted to turn on a closet light by means of a dangling light switch from the ceiling of the closet. This switch was too high for Mrs. Bangasser to reach, and thus she always used a light

switch located on the wall by the stairway, as did her relatives. Certain items of value were missing from the house, namely Mrs. Bangasser's wedding and engagement rings, which she was wearing the previous evening, and a set of keys, which included keys to the car and garage. Finally, defendant was observed outside the Bangasser garage "fumbling" through a set of keys at the time in question, and driving off in the Bangasser car shortly thereafter. (*Cf. People v. Baker* (1978), 59 Ill. App. 3d 100, 101, 375 N.E.2d 176.) These circumstances justify an inference by the jury that someone other than Mrs. Bangasser was present in her home on the morning of her death, and that that person was the defendant.

With respect to the element of an entry without authority into both the house and the garage, the fact that a private building, as opposed to a public one, was the subject of the theft is significant. In such cases, this district has long held that the fact of an unauthorized entry must be proved separately from the fact of an entry with a wrongful intent. (*In re S.R.H.* (1982), 106 Ill. App. 3d 276, 279-80, 435 N.E.2d 883; *People v. Baker* (1978), 59 Ill. App. 3d 100, 102-03, 375 N.E.2d 176.) Thus, it is not sufficient to show that defendant entered either the Bangasser house or garage with an intent to steal something inside. Rather, it must also be shown that the entry itself was without authority. (*In re S.R.H.* (1982), 106 Ill. App. 3d 276, 279-80, 435 N.E.2d 883; *People v. Baker* (1978), 59 Ill. App. 3d 100, 102-03, 375 N.E.2d 176.) With respect to the Bangasser residence, while there is ample evidence to support an inference that defendant entered the house with an intent to commit a theft, there is no evidence to indicate that he entered without Mrs. Bangasser's authority. The facts that defendant lived only two doors away from the Bangasser residence, that he likely knew the decedent by virtue of the fact that he had been her paperboy in the past, and that there were no signs of a forced entry or a struggle inside the house lend credence to the theory that Mrs. Bangasser allowed defendant into her home. We conclude there was insufficient evidence to support a finding that defendant entered the home without authority.

■ However, contrary to this, there is evidence to support a finding that defendant entered the garage without authority. Certain facts in the instant case tend to establish a lack of communication between Mrs. Bangasser and the defendant and thus that defendant was acting without her authority when he entered the garage. Defendant was observed "fumbling" through the set of car keys outside the garage and he used a key to open the electric garage door. These facts tend to show that Mrs. Bangasser neither told defendant which key to use

nor informed him that the garage door could be opened by means of an electric garage door opener located just inside the kitchen door. These facts, together with the subsequent taking of the car, which defendant at all times denied, tend to indicate that defendant's entry into the garage was without authority.

■ With respect to the offense of aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(10)), defendant argues that the proof was lacking as to the elements of defendant's presence in the house and his infliction of bodily harm upon the decedent. As previously stated, the facts sufficiently establish defendant's presence inside the house. However, we do not believe there was sufficient evidence that defendant inflicted bodily harm upon Mrs. Bangasser. The only evidence in this regard was the presence of bruises on the decedent's hand and arm, as well as a large bruise discovered on the defendant's hand. The testimony regarding Mrs. Bangasser's bruises was inconclusive as to when they occurred. The experts could only state that they occurred within several days of her death. We conclude that while the bruises found on the decedent's body, as well as those discovered later on defendant's hand, were consistent with the accused's guilt, they were not inconsistent with a reasonable hypothesis of innocence, *i.e.*, that they occurred at different times by means of other more innocent instrumentalities. (See *People v. Scribner* (1982), 108 Ill. App. 3d 1138, 1143, 440 N.E.2d 160.) Accordingly, we conclude that the evidence was insufficient to prove defendant guilty of aggravated battery beyond a reasonable doubt.

■ Similarly, we conclude that there was insufficient evidence to establish the use of force or the threat of force upon Mrs. Bangasser by defendant, a necessary element of the offense of robbery. (Ill. Rev. Stat. 1983, ch. 38, par. 18—1(a).) Initially, there was no evidence that defendant took the rings off of Mrs. Bangasser's finger, since these rings were never recovered and were not found in defendant's possession. Also, there was no evidence that any of the missing items were taken by force or threat of force. Nothing in the house was in disarray, nor was there any evidence of a struggle having taken place, except for the bruises found on Mrs. Bangasser's hand and forearm. These bruises cannot be attributed to the defendant beyond a reasonable doubt. Further, even if it could be assumed that the bruises were inflicted by defendant, there was no evidence indicating that any force or threat of force preceded or was contemporaneous with the taking of the property. (See *People v. Kleba* (1982), 110 Ill. App. 3d 345, 355-56, 442 N.E.2d 605; *People v. King* (1979), 67 Ill. App. 3d 754, 759, 384 N.E.2d 1013.) Accordingly, we conclude there was insuf-

ficient evidence to establish that the defendant committed a robbery while inside the Bangasser residence.

Finally, because we have concluded that the underlying offenses of residential burglary and robbery were not proved beyond a reasonable doubt, we must necessarily conclude that defendant's conviction for felony-murder based upon these offenses must also be reversed. Therefore, we do not reach the question whether Dr. Stein was improperly permitted to opine as to the cause of death.

For the foregoing reasons, defendant's conviction for burglary is affirmed. Defendant's convictions for residential burglary, robbery, aggravated battery, and felony-murder are reversed, and the cause is remanded for resentencing in accordance with the views expressed in this opinion.

Affirmed in part; reversed in part; remanded.

NASH, P.J., and STROUSE, J., concur.