THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWARD M. BAILEY II, Defendant-Appellant.

Fifth District No. 5—87—0355

Opinion filed September 8, 1989.

CHAPMAN, J., dissenting.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Garnati, State's Attorney, of Marion (Kenneth R. Boyle, Stephen E. Norris, and Ellen Eder Irish, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

The defendant, Edward M. Bailey II, was convicted by a jury of burglary of a motor vehicle, specifically, a van, and two counts of theft. He was sentenced to serve extended-term sentences of 10 years on the burglary conviction and six years on each of the convictions for theft, the sentences to be served concurrently. The defendant now appeals, raising three issues for review: (1) whether he was proved guilty beyond a reasonable doubt of the burglary of the van because the State failed to show that he entered it without authority; (2) whether the trial court abused its discretion in imposing an extended-term sentence on the burglary conviction because that sentence was grossly disparate to the sentences imposed on the "other participants" in the event; and (3) whether the trial court erred in imposing an extended-term sentence on both the burglary conviction and the two convictions for theft.

At trial Gary Allsopp testified that around September 11, 1986, four guns were taken from his home in Herrin, Illinois, including a

.22 caliber rifle and a .357 caliber revolver. Steven Gourley, a friend of Allsopp, testified that "towards the end of September" of 1986 Victor Roman had shown him a .357 caliber revolver. Knowing Allsopp's gun of that description had been stolen, Gourley discussed the matter with Allsopp and checked the serial number of Allsopp's gun against the one Roman had. Gourley determined that the gun was Allsopp's and agreed to take Roman to see Allsopp. When the men met, Allsopp informed Roman that the gun was his and called the police.

Don Bailey, the defendant's brother, testified that at the time of trial he was on probation for the theft of four guns from Gary Allsopp, including the .22 caliber rifle and the .357 caliber revolver. As a condition of receiving probation, this witness had agreed to testify at the defendant's trial consistently with a written statement he had made previously to the police. At trial the witness testified that, after stealing the guns from Allsopp, he and John Renfro had placed the rifle and revolver in the witness' van, which was parked in the driveway of his home in Herrin. The witness stated that, although he had given defendant permission to enter and use the van whenever he wished, he had not given defendant permission to take the rifle or the revolver. The witness stated further that he had not given Victor Roman permission to take the rifle or the revolver and that Roman did not have permission to enter or use the van. The witness said that in September of 1986 the defendant was living with him and his wife at their home in Herrin, although during the first two weeks of September the witness and his wife had stayed with his parents in Carbondale in anticipation of the birth of a baby.

John Renfro testified that he and Don Bailey had stolen the guns from Allsopp's house and that he had agreed to plead guilty to burglary of the Allsopp residence in exchange for being sentenced to probation. Renfro identified the rifle and revolver as the guns placed in Don Bailey's van around September 14. He indicated that he and Don Bailey were "co-owners" of the guns and stated that neither the defendant nor Victor Roman had permission to take them. He stated that the defendant had not been involved in the theft of the guns from Allsopp's house.

Victor Roman testified that on September 14, 1986, he had gone with the defendant to Don Bailey's residence and that, after coming out of the house, he, that is, Roman, and the defendant had entered the van parked there because, upon looking into the van through the windshield, they had seen two guns on the floor. He testified that the defendant said they could get the guns. After entering the van, the

witness and the defendant both held and examined the two guns, namely, the rifle and the revolver, and then removed them from the van, intending to sell them. The witness testified that neither he nor defendant had permission to take either weapon. The rifle was put into a guitar case provided by the defendant. After leaving the van, Roman and the defendant drove to Doug Smith's house to try to sell the guns, but Smith was not at home. Roman stated that he had returned alone to Smith's house later and had sold the rifle to a man there. One or two days later, he said, he had seen Steve Gourley, who told him he knew someone who would buy the revolver. When Roman tried to sell it to Allsopp, Allsopp claimed the revolver was his, and the police were called. The witness testified that he had pleaded guilty to the offense of theft of firearms from Don Bailey, that this was his first conviction, that he had been sentenced to probation, and that a condition of his probation was that he was to testify truthfully at the defendant's trial.

Herrin police officer Michael Spruell testified that he had investigated the burglary and theft at Gary Allsopp's house and had obtained written statements from Victor Roman, Don Bailey, and the defendant. The defendant's statement, which was given on September 16, 1986, and admitted into evidence, reads in pertinent part:

> "A couple of days ago, Vic Roman and myself went to my brother Don's apartment, to get some food. We looked through Don's brown 1969 Ford van and Vic and I found a pistol lying on the floor. Vic and I took the pistol back to Vic's house. I knew that the pistol was probably stolen, so Vic and I were going to sell it for whatever we could get out of it. I have had Officer Spruell of the Herrin Police write this statement for me."

According to Officer Spruell, the defendant stated that although he had not been sure to whom the revolver in his brother's van belonged, he "had an idea" that it might have been stolen. Officer Spruell admitted, however, that when he wrote the defendant's statement for him, he wrote that the defendant "knew" the gun was probably stolen, not that he "had an idea" that the gun might have been stolen. The officer testified further that he had read the defendant's statement to him, that the defendant had read the statement, and that, after reading it, the defendant had signed the statement affirming its truthfulness and accuracy. Later, on September 21, 1986, Officer Spruell learned from Roman that the rifle had also been taken from the van.

Tracy Bailey, Don Bailey's wife and the defendant's sister-in-law,

testified that the defendant had lived with her and her husband in September of 1986. She stated that the defendant had had authority to use their van.

The defendant testified that sometime after his release from the Department of Corrections in May of 1986 he had moved into his brother Don's house in Herrin. The defendant stated that because his car had been repossessed, he drove Don's car and, when Don traded that car for a van, defendant was allowed to use that vehicle. On September 14, 1986, he said, he and Victor Roman had gone to Don Bailey's house. He testified that he had gone into the house alone and that when he came out of the house Roman was inside the van. The defendant stated that Roman told him there were guns inside the van and that he would like to sell them. The defendant said that he did not respond but went into the van to retrieve some speakers he had loaned to Don. He noticed the guns for the first time, he said, after he was inside the van. He testified that Roman took the .357 caliber revolver but denied ever having touched the gun himself. The defendant testified further that he believed the gun might have been Roman's because Roman had previously mentioned that he owned a gun and the defendant had never known his brother Don to have a gun.

The defendant stated that he and Roman returned to the van later that day to get the rifle. Although the defendant provided a guitar case from the house in which to carry the rifle, he said that he did not enter the van to retrieve the rifle and did not touch the gun. Defendant stated that he and Roman then took the rifle to Doug Smith's house but, because Smith was not at home, they returned later that evening. The defendant stated that Roman sold the rifle to William Doty, who was present at Smith's house, but the defendant denied participating in any way in the sale of the rifle to Doty. Defendant testified that Roman told Doty that the gun was "hot" and that this information surprised the defendant.

The next morning Roman told the defendant that he had tried to sell the revolver to its rightful owner. The defendant accompanied Roman to Roman's house, and Officer Spruell arrived there. The defendant stated that he had told Officer Spruell that he did not think Roman was stealing the guns when he removed them from the van. The defendant testified further that he did not steal the guns from the van and denied having given Roman permission to do so. The written statement he had given to Officer Spruell, he said, was not truthful.

In rebuttal, Doug Smith testified that during the evening of Sep-

tember 14, 1986, the defendant and Victor Roman came to his house. He stated that both the defendant and Roman tried to sell the rifle to him, and that it was the defendant who first quoted a price of $35 and later lowered that figure to the actual selling price paid by Doty, who bought the rifle.

The jury convicted the defendant of the burglary of Don Bailey's van and the theft of the revolver and rifle. The trial court denied the defendant's motion for a new trial, and this appeal followed.

With regard to the first issue presented for review, the defendant contends that he was not proved guilty of burglary beyond a reasonable doubt because the State failed to show that he entered the van in question without authority. He argues that his authority to enter and use the van was "unlimited" and that, therefore, his entry into it cannot support a conviction for burglary. At oral argument defendant conceded that there was sufficient evidence at trial from which it could be concluded that he entered the van with the intent to commit a theft. The State maintains, in reliance upon the "limited authority" doctrine, that the defendant exceeded the authority given him when he entered the van with the intent to commit a theft. The State argues in the alternative that the defendant is guilty of burglary under an accountability theory of liability.

■■ ■ A person commits burglary "when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1985, ch. 38, par. 19—1.) The burglary statute requires an entry that is both without authority and with intent to commit a felony or theft. (*People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245, *cert. denied* (1969), 395 U.S. 959, 23 L. Ed. 2d 746, 89 S. Ct. 2100.) Thus, a criminal intent formulated after a lawful entry will not satisfy the statute (*Weaver*, 41 Ill. 2d 434, 243 N.E.2d 245). However, authority to enter a business building or other building open to the public extends only to those who enter with a purpose consistent with the reason the building is open. (*People v. Blair* (1972), 52 Ill. 2d 371, 288 N.E.2d 443; *Weaver*, 41 Ill. 2d 434, 243 N.E.2d 245; *People v. Drake* (1988), 172 Ill. App. 3d 1026, 527 N.E.2d 519; *People v. Taylor* (1987), 164 Ill. App. 3d 938, 518 N.E.2d 409; *People v. Boose* (1985), 139 Ill. App. 3d 471, 487 N.E.2d 1088; *People v. Davis* (1977), 54 Ill. App. 3d 517, 369 N.E.2d 1376; *People v. Woolsey* (1975), 24 Ill. App. 3d 1079, 322 N.E.2d 614; *People ex rel. McLain v. Housewright* (1973), 9 Ill. App. 3d 803, 293 N.E.2d 911.) An entry into such a building

with intent to commit a theft cannot be said to be within the authority granted those who might enter. (*Boose*, 139 Ill. App. 3d 471, 487 N.E.2d 1088; see *Blair*, 52 Ill. 2d 371, 288 N.E.2d 443; *Weaver*, 41 Ill. 2d 434, 243 N.E.2d 245.) When the burglary involves a public building, the element of entry without authority need not be established apart from the element of entry with intent to commit a theft. (*People v. Perruquet* (1988), 173 Ill. App. 3d 1054, 527 N.E.2d 1334; *Boose*, 139 Ill. App. 3d 471, 487 N.E.2d 1088.) Under such circumstances, the element of entry without authority need not be established apart from the element of entry with intent to commit a felony, because entry with the intent to commit a felony is entry "without authority." *Taylor*, 164 Ill. App. 3d 938, 518 N.E.2d 409.

In *People v. Fisher* (1980), 83 Ill. App. 3d 619, 623, 404 N.E.2d 859, 863, the court found the logic of the "public building" line of cases equally applicable to the burglary of an apartment by defendants who were given consent "to enter the apartment for the limited purpose of a social visit, not to burglarize the premises." The court concluded that such entry was not in accord with the will of the occupants and was, therefore, unauthorized. "Because defendants were given authority to enter the apartment for the purpose of a social visit only, the criminal actions they planned were inconsistent with this limited authority, and served to vitiate the consent given for their entry." (*Fisher*, 83 Ill. App. 3d at 623, 404 N.E.2d at 862-63.) The court in *Fisher* relied in part upon the reasoning of the court in *Woolsey*, in which the defendant's conviction of burglary of his place of employment was affirmed and his argument rejected that he had not entered the building without authority after working hours because he had used a key given him by his employer:

> " 'While unlimited consent to enter is always a defense against a charge of burglary at common law or under statutes which include in the definition of the offense breaking and entering or the use of force in the entry, *a consent limited as to place, time, or purpose is not a defense where entry occurs outside the limitations stated or implied.*' " (Emphasis added.) (24 Ill. App. 3d at 1082, 322 N.E.2d at 617, quoting Annot., 93 A.L.R.2d 531, 537 (1964).)

We followed *Fisher* in *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178, in holding that the entry by defendants there was "without authority" under the home invasion statute when they came to the private residence of a social acquaintance and were allowed to enter the residence through the invitation of an occupant but later drew their weapons upon their hosts, bound and gagged

them, and stole their property. Recently, in *People v. Davis* (1988), 173 Ill. App. 3d 300, 305, 527 N.E.2d 552, 555, the court determined that although the murder victim therein let the defendant and another man into the house, the elements of home invasion had been established:

> "We are not persuaded to hold otherwise because, as the defendant argues, Moses Willis may have let the two men into the house. It is not reasonable that he did, but if he did, it is immaterial. The cumulative independent evidence shows that regardless of how the defendant and codefendant gained access to the Willis home, they exceeded any possible original authority granted to them when they terrorized Willis and his family. *People v. Strong* (1984), 129 Ill. App. 3d 427, 472 N.E.2d 1152; *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178."

*Hudson* was followed earlier in *People v. Strong* (1984), 129 Ill. App. 3d 427, 472 N.E.2d 1152, *People v. Sanders* (1984), 129 Ill. App. 3d 552, 472 N.E.2d 1156, and *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179, each of which involved the offense of home invasion.

The court in *Sanders* found distinguishable the case of *People v. Peace* (1980), 88 Ill. App. 3d 1090, 411 N.E.2d 334, as predating *Hudson* and restricting the "limited authority" doctrine to burglary of public buildings. The court in *Peace*, decided by the second district, was unwilling "to extend the 'limited purpose' rule of buildings open to the public so as to allow it to apply to express purposes authorized in a private home" and determined that the defendant's entry into a residence was not without authority, reversing his conviction for burglary. (88 Ill. App. 3d at 1093, 411 N.E.2d at 336.) The defendant in *Peace* had been permitted to enter the residence by a 12-year-old girl babysitting there, who had allowed him to enter at his request to use the telephone; while there he battered and attempted to rape her. We note that in a series of cases, including *People v. Baker* (1978), 59 Ill. App. 3d 100, 375 N.E.2d 176, *In re S.R.H.* (1982), 106 Ill. App. 3d 276, 535 N.E.2d 883, *rev'd* (1983), 96 Ill. 2d 138, 449 N.E.2d 129 (held: allegations of supplementary delinquency petition omitting the phrase "without authority" sufficient to charge respondent with burglary), and *People v. Hepler* (1985), 132 Ill. App. 3d 705, 711, 477 N.E.2d 768, 773, the second district has held in cases involving entry into a private building, as it said in *Hepler*, "that the fact of an unauthorized entry must be proved separately from the fact of an entry with a wrongful intent."

 █ The burglary statute makes no distinction between a building and a motor vehicle. The law is well established that one who enters a public building to commit a felony or theft exceeds any possible original authority granted to enter. The so-called "limited authority" doctrine has been extended to include the burglary of a private residence as well. The doctrine has been applied further to the offense of home invasion. For purposes of the application of this doctrine to the burglary statute, we can make no meaningful distinction between a private residence and a motor vehicle. As the court said in *People v. Schneller* (1966), 69 Ill. App. 2d 50, 54, 216 N.E.2d 510, 512, which held that entry into a museum with intent to commit a theft was without authority:

> "The opening of a museum's doors to the public is an invitation to enter for the lawful purpose of viewing the exhibits on display. The authority of one who accepts such invitation is necessarily coincident with the terms of the offer, and it would be contrary to reason and ordinary human understanding to deduce that the welcome extended under those circumstances includes authority to enter for any different purpose, especially one which is unlawful or criminal."

We think it contrary to reason and ordinary human understanding to suppose that the permission extended to the instant defendant by his brother to enter and use the van included authority to enter it in order to steal part of its contents. Indeed, Don Bailey expressly testified that he had not given the defendant or Victor Roman permission to take either of the weapons that were removed from the van. Plainly, the defendant's entry here was not in accord with the will of his brother and was, therefore, unauthorized. We conclude that the defendant exceeded the authority granted to him to enter and use the van when he entered it to steal the weapons contained therein and hold that his entry was without authority. Since the defendant does not dispute that he entered the van with the intent to commit a theft, we affirm the judgment entered on the conviction for burglary.

 Even if the defendant had not been properly found guilty of burglary by virtue of having exceeded the authority given him to enter and use the van, the jury was properly instructed concerning legal responsibility, and sufficient evidence was adduced at trial to support a conviction on a theory of accountability. A defendant may be found guilty of burglary on a theory of accountability under section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c); see, *e.g., People v. Riley* (1981), 99 Ill. App. 3d 244, 424 N.E.2d 1377 (convictions for burglary and theft affirmed on basis of

accountability even though defendant was charged as a principal)). To establish guilt through accountability it is necessary to establish that the defendant aided or agreed to aid another in the planning or commission of the offense, that such participation took place either before or during the commission of the offense, and that the defendant intended to promote or facilitate the commission of the offense. *People v. Ruckholdt* (1984), 122 Ill. App. 3d 7, 460 N.E.2d 847; *People v. Menken* (1977), 54 Ill. App. 3d 199, 369 N.E.2d 363.

■ In the instant case, Victor Roman testified that he and the defendant looked through the windshield of the van, saw the guns on the floor, and decided to take them. Roman and the defendant then entered the van, and both handled the weapons. Both Roman and the defendant testified that the defendant provided a guitar case in which to carry the rifle. In addition, in his voluntary statement to Officer Spruell, the defendant admitted that both he and Roman took a pistol from the van and that they were "going to sell it for whatever we could get out of it." The evidence shows that defendant aided Roman in the commission of the offense, that defendant's participation occurred during the commission of the offense, and that the defendant intended to promote and facilitate the commission of the offense. The evidence adduced at trial was more than sufficient to permit the jury to conclude that the defendant was guilty of burglary on a theory of accountability.

■ Furthermore, defendant cannot argue that his authority to enter and use the van enabled him to authorize Roman's entry into the van for the unlawful purpose of stealing the weapons. (See *People v. Martin* (1983), 115 Ill. App. 3d 103, 449 N.E.2d 1039.) In *Martin* the court held that while an unemancipated minor living in his parents' house may have had the ability to authorize entry into the house for lawful purposes, he could not authorize a third person's entry into his parents' house for the unlawful purpose of stealing his parents' jewelry. Similarly, in the instant case, it was beyond the defendant's authority to allow Victor Roman to enter Don Bailey's van for the purpose of committing a theft and, as a consequence, Roman's entry into the van was unauthorized.

The defendant next contends that the trial court abused its discretion in imposing an extended-term sentence because that sentence was grossly disparate to the sentences imposed on the other participants in the offense. The defendant contends that four people were involved in the burglary and the theft of the guns belonging to Gary Allsopp. The defendant argues that because his sentence was more severe than the sentences imposed on other persons involved in the

theft of the guns, his sentence should be vacated and the cause remanded for resentencing. As the State points out, however, only Edward Bailey and Victor Roman were defendants in the instant case. Neither the defendant nor Roman was involved in the burglary and theft of the guns from the home of their owner, Gary Allsopp. The sentences imposed for the offenses committed by Don Bailey and John Renfro, who entered the Allsopp home and removed the four weapons, cannot properly be compared to the sentence imposed upon the defendant's burglary conviction inasmuch as Don Bailey and John Renfro were neither involved in nor charged with the burglary of the van. The only sentence with which the defendant's sentence can properly be compared is that of Victor Roman, who participated in the criminal act of which the defendant stands convicted. See, *e.g.*, *People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207.

■■ ■ It is not the function of a reviewing court to serve as a sentencing court and, absent an abuse of discretion, a sentence will not be disturbed on review. (*People v. Holloway* (1983), 119 Ill. App. 3d 1014, 457 N.E.2d 466.) Fundamental fairness and respect for the law, however, require that defendants similarly situated should not receive grossly disparate sentences. (*People v. Cook* (1983), 112 Ill. App. 3d 621, 445 N.E.2d 824.) In determining whether a sentence is excessive in light of a lesser sentence imposed on a codefendant, consideration is to be given to the differences in criminal background and the degree of participation by each defendant in the commission of the offense. (*People v. Martin* (1980), 81 Ill. App. 3d 238, 401 N.E.2d 13.) A disparate sentence may be supported by either a more serious criminal record or greater participation in the offense. *Martin*, 81 Ill. App. 3d 238, 401 N.E.2d 13.

■■ A comparison of the criminal records of Victor Roman and the defendant supports the conclusion that the trial court did not abuse its discretion in sentencing the defendant. The only information concerning the criminal activity of Roman in the record is that the day before the defendant's trial commenced on January 9, 1987, Roman pleaded guilty to the theft of a firearm from Don Bailey's van and was placed on probation. As defendant admits in his brief, there is no indication in the record that Roman had a juvenile record of delinquency. Roman's only substantiated conviction appears to be that arising out of the incident involved here. By comparison, the record shows that the instant defendant was adjudicated delinquent while a juvenile on three separate occasions for the offenses of burglary and theft. In addition, in 1984 defendant was charged as an adult with burglary and theft. Two months later the defendant was

again charged with theft. He entered negotiated pleas in both cases and was sentenced to a term of three years in the Department of Corrections as to each plea with the sentences to run concurrently. He was incarcerated in the Department of Corrections until May of 1986; on September 14 of that same year defendant committed the burglary and thefts of which he was convicted herein.

In sentencing the defendant, the trial court stated that it had read the presentence investigation report and had heard the arguments and recommendations of counsel and the statement of the defendant. The court observed that the defendant's prior stay in the Department of Corrections had apparently not dissuaded him from the commission of further crimes, stating that the only way to prevent the defendant from committing still further crimes was to incarcerate him. The court indicated that it would deprecate the seriousness of the offense if the defendant were not sentenced to a considerable period of time in prison and that society needed to be protected from the defendant. Thus, the record reveals that the trial court carefully considered the sentence imposed and did not abuse its discretion in sentencing the defendant to an extended-term sentence of 10 years upon the conviction for burglary. Accordingly, that sentence may not now be disturbed.

■■ ■ Finally, the defendant contends, and the State concedes, that the trial court erred in imposing an extended-term sentence on both defendant's burglary conviction and his two convictions for theft. When a defendant has been convicted of multiple offenses of differing classes, and circumstances exist which warrant an extended term, an extended-term sentence may be imposed only for the conviction within the most serious class of offenses (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569). The imposition of an extended-term sentence for the defendant's burglary conviction, a Class 2 felony, was warranted because of the defendant's prior burglary conviction. However, the imposition of concurrent extended-term sentences for the thefts of the firearms, Class 4 felonies, is erroneous. Nevertheless, this court need not remand for resentencing on the theft convictions. The court's imposition of a six-year extended term on each of the theft charges, that being the maximum sentence permitted for a Class 4 felony under the extended-term provisions of section 5—8—2(a)(6) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(6)), demonstrates that the sentencing court intended to impose the maximum allowable penalty. The sentence range for a Class 4 felony is from one to three years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(7).)

This court may therefore impose the maximum allowable non-extended term of three years for the two theft convictions. (See *People v. McNair* (1985), 138 Ill. App. 3d 920, 486 N.E.2d 941.) Accordingly, we affirm the judgment upon the defendant's convictions for theft and burglary, we affirm the sentence of 10 years imposed upon the burglary conviction, and we modify the sentences imposed upon each of the convictions for theft to three years, all sentences to be served concurrently.

Convictions affirmed; sentences affirmed in part and modified in part.

RARICK, J., concurs.

JUSTICE CHAPMAN, dissenting:

I cannot join in the majority's decision because it further erodes the distinction between theft and burglary. After today, virtually any theft which occurs in a building or a vehicle can be successfully prosecuted as a burglary. Indeed, the only instance where a theft is not a burglary, under the majority's reasoning, is where it occurs in an open field or on a public street. My dissent is not based solely on my concern about extending the limited authority doctrine to motor vehicles. It is certainly not based upon concern for this defendant. (It is difficult to feel any concern for a person who steals from a brother who is kind enough to grant him the use of his vehicle, even though the brother himself is a confessed thief.) My concern is that anyone convicted of a crime should be convicted of the conduct that the legislature intended to prohibit and should be punished according to the penalties prescribed for that conduct. The defendant here is guilty of theft and should be so sentenced. He is not guilty of burglary.

My disagreement with the majority is based both upon the historical elements of the crime of burglary and a critical examination of the doctrine itself. Burglary at common law was a breaking and entering the dwelling house of another in the nighttime with the intent to commit a felony (Ill. Ann. Stat., ch. 38, par. 19—1, Committee Comments, at 569 (Smith-Hurd 1977), citing 4 Blackstone, Commentaries 224)). The underlined portions of the preceding sentence furnish the justification for treating burglary as a more serious crime than simple theft. First, burglary involved a breaking into a building, an element that suggests a degree of force or violence. Second, it involved a dwelling and the consequent presence or possible presence of people as opposed to harm to property only. Finally, it

was a crime of the dark, which is probably less important for any connotation of evil associated with the night than it is for the increased likelihood of human presence in the building in the nighttime, and therefore the increased likelihood of injury. The stress on the possible injury to an inhabitant is not meant to imply that human presence was a necessary element of the crime of burglary. It was sufficient that the site was a dwelling place to which someone was likely to return (*Schwabacher v. People* (1897), 165 Ill. 618), but it is meant to point out that under both the older statutes and under the common law burglary was treated separately and as a more serious offense because of the nature of the entered property.

This common law distinction was followed in the early statutes on burglary. The 1827 statute listed burglary under the heading "Crimes and Offences Against Habitations and Other Buildings" (Rev. Code of the Laws of Ill. 1827, at 133, §58 *et seq.*), while larceny was classified under the more general "Crimes and Offences Relative to Property" (Rev. Code of the Laws of Ill. 1827, at 134, §61 *et seq.*), and the penalty for burglary was more severe (Rev. Code of the Laws of Ill. 1827, at 133, §60, at 134, §62).

The 1827 statute is set out below as it remained essentially the same (except for penalties) through repeated changes:

"Sec. 60. Every person who shall, in the night time, willfully, maliciously, and forcibly break and enter, or willfully and maliciously, without force (the doors or windows being open) enter into any dwelling house, kitchen, office, shop, store-house, ware-house, malt-house, still-house, mill, pottery, factory, water craft, church, or meeting-house, with intent to commit murder, robbery, rape, mayhem, larceny, or other felony, shall be deemed guilty of burglary; and upon conviction thereof, shall be whipped, not less than fifty, nor more than one hundred lashes, on his bare back; be fined a sum not more than one thousand dollars, and be imprisoned for a term not exceeding three years." Rev. Code of the Laws of Ill. 1827, at 133, §60.

As a matter of historical note, the class of buildings covered was expanded in 1869 (1869 Ill. Laws 112 (§2)), and the nighttime element was eliminated in 1877 (1877 Ill. Laws 85 (§1)). The nighttime element has remained absent since 1877, although in 1885 the legislature did provide for a more serious minimum sentence for nighttime entry (1885 Ill. Laws 73 (§1)).

It is apparent that this early statute, while retaining the common law requirement of entry at nighttime, had broadened the proscribed buildings considerably beyond that of the common law dwelling

house. The statute also relaxed the requirement of forcible entry as the legislature recognized that illegal entry could be made into an open as well as a closed building. The legislature did require, however, that the *entry* be made willfully and maliciously. This requirement was in addition to the element of *intent* to commit one of the enumerated crimes once the defendant was in the building. The element of willful, malicious entry was repeated in every legislative reenactment until the passage of our present burglary statute in the Criminal Code of 1961. That statute reads:

> "§19—1. Burglary (a) A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4—102 of The Illinois Vehicle Code." (Ill. Rev. Stat. 1985, ch. 38, par. 19—1.)

The element of intent is still present in the statute. The earlier "willful, malicious" language has been replaced by the phrase "without authority," which has been construed to possess the same meaning. See *People v. Schneller* (1966), 69 Ill. App. 2d 50, 216 N.E.2d 510.

In this case the defendant concedes at oral argument that there was evidence from which the jury could conclude that he entered the van with the intent to commit a theft, but he argues that he cannot be guilty of burglary because of the absolute authority to enter and drive his brother's van which he possessed. The statute does set out two separate elements: intent and entry without authority. The State concedes the extent of the defendant's original authority. How then has the defendant been convicted of burglary rather than theft?

The answer to the question lies not in the criminal statute that the legislature has passed, but in the way the statute has been construed by the courts. The first cases to apply the doctrine of limited authority dealt with public buildings. Supermarkets and museums are obviously open to the public. Anyone is free to enter. All have lawful authority to enter. Nevertheless the courts have affirmed convictions on burglary charges of defendants convicted of stealing from such buildings. The case of *People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245, *cert. denied* (1969), 395 U.S. 959, 23 L. Ed. 2d 746, 89 S. Ct. 2100, involved the burglary of a laundromat. The defendant contended that the State had failed to prove that he entered without authority because the laundromat was open to the public at the time the crime was committed. Justice Schaefer first stated that entering

without lawful authority was one of the elements of the crime, but then went on to affirm the conviction of the defendant. The only case cited in *Weaver* in support of its holding was *People v. Brown* (1947), 397 Ill. 529, 74 N.E.2d 706, which involved a *pro se* defendant convicted of burglarizing a 24-hour gas station who claimed he should only have been convicted of larceny. The court in *Brown* characterized his argument in the following language: "The gist of these contentions is that an indictment for burglary cannot be based upon an entry without force." (*Brown*, 397 Ill. at 530, 74 N.E.2d at 707.) The court in *Brown* went on to hold that since the statute provided for a conviction on a burglary charge even though the entry was "without force" that the defendant was properly found guilty. The court in *Brown* did not discuss the limited authority doctrine for which it was cited in *Weaver*. The only rationale that has been suggested for the holding is that the authority extended to the public was only the authority to enter, but not the authority to enter with evil intent and that the evil intent therefore destroys the initial authority. The difficulty with this rationale is that intent is a *separate* element of the crime. Proof of the one element does not establish proof of the other.

The majority quotes from *People v. Schneller* (1966), 69 Ill. App. 2d 50, 216 N.E.2d 510, 512 (*Bailey*, 188 Ill. App. 3d at 287). The analysis in the quotation has a certain surface appeal. No one is going to invite a thief who is bent upon thieving into his museum or supermarket or home or van. The private owners have the right to exclude the thief and it is proper to do so. The courts would give little consideration to suits brought by frustrated thieves who complained that a supermarket owner would not let him enter the market to rob it of its rhubarb. But we are not speaking of private rights. We are speaking of the Criminal Code. The legislature says that the exertion of unauthorized control over property of the owner is theft and is punishable by certain penalties. It also says that entering without authority when coupled with theft or another felony is more serious and is punishable by more severe penalties. If a thief said, "I am coming into your store to rob you of your rhubarb," and the store owner answered, "You can't come in under those circumstances," and the thief persisted in his criminal activities, then the thief would be guilty of burglary because he knowingly entered without authority. To say that the thief knew he had no authority to commit theft is not to say he knew he had no authority to enter.

What do these words "without authority" mean in the statute? They mean nothing under the doctrine of limited authority. What

then do they mean in other criminal statutes? A review of the Criminal Code reveals a plethora of phrases identical to or substantially similar to the "without authority" language of the burglary statute.

The following statutes contain the phrase "without authority" or similar language. They are all in chapter 38:

| §10—3 | Unlawful restraint—"knowingly without legal authority" |
|---|---|
| §10—4 | Forcible detention—"without lawful authority" |
| §12—1 | Assault—"without lawful authority" |
| §12—6 | Intimidation—"without lawful authority" |
| §12—11 | Home Invasion—"without authority" |
| §16—1 | Theft—"exerts unauthorized control" |
| §16—5 | Theft from coin-operated machines—"without authority" |
| §16D—3 | Computer tampering—"without authorization" |
| §16D—7 | Rebuttable presumption—"without authority" |
| §17—2 | Impersonating a police office—"when not authorized" |
| §19—4 | Criminal trespass to residence—"without authority" |
| §21—2 | Criminal trespass to vehicle—"without authority" |
| §21.2—2 | Interference with a public institution of higher education—"without authority" |
| §25—1 | Mob action—"without authority of law" |
| §31A—1 | Bringing contraband into a prison—"without authority" |
| §32—6 | Performance of unauthorized acts—"not authorized by law" |
| §32—8 | Tampering with public records—"without lawful authority" |
| §32—9 | Tampering with public notice—"without lawful authority" |
| §42—1 | Looting—"without authority of law or the owner" |

The effect of the majority's decision on these statutes is unclear, but the possibility exists that the judicial excision of legislative lan-

guage in the burglary statute could be extended to any of the other similar statutes. Indeed, this court has held that "without authority" should mean the same thing under the burglary and the home invasion statutes. *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 1045, 448 N.E.2d 178, 180-81.

The specter of possible involvement of other statutes in the limited authority area is not my prime concern. I am more concerned because this further expansion of the limited authority doctrine has placed a surprising group of people within the reach of the burglary statute: lessees and owners of the burglarized premises. A few examples serve to illustrate my concerns.

Two brothers share an apartment, and one of them takes $5 from the desk of the other. Burglary is charged, and the defendant claims that: (1) he had no intent to steal upon entering the apartment; and (2) his entry into the apartment was not unauthorized. The trial judge, however, is not fooled by such trickery, because he has carefully read the opinions of the appellate court.

"The fact that property is taken after entry is evidence that the intent to steal existed at the time of the entry" states the judge, citing *People v. Snow* (1984), 124 Ill. App. 3d 955, 464 N.E.2d 1262.

"But your honor," pleads the defendant, "even if that is true, my entry into the apartment was not unauthorized. It is, after all, *my* apartment."

"Foolish defendant," says the judge, rolling his eyes at such a pitiful argument. "It is well settled that the authority to enter and use the apartment does not include the authority to enter it for the purpose of stealing part of its contents. Your brother testified that he did not give you permission to take the $5.00 from his desk. As the court explained in *People v. Bailey*, '[p]lainly, the defendant's entry here was not in accord with the will of his brother and was, therefore, unauthorized.' " (*People v. Bailey* (1989), 188 Ill. App. 3d 278, 287.) "Guilty as charged."

Other examples are equally disturbing: (1) the lessee of a furnished apartment sells a lamp belonging to the lessor—burglary; (2) a homeowner illegally connects his television to a cable outlet—burglary; (3) a jewelry store owner sells a watch that a customer had brought in to be repaired—burglary; (4) a homeowner uses someone else's credit card to make a long distance phone call from his home—burglary; (5) a man rents a car and steals the spare tire from the trunk—burglary.

The results of the above scenarios might be acceptable, of course, if it were clear that the legislature intended such activities to be pun-

ishable as burglary. The plain language of the burglary statute, however, precludes such an interpretation. The statute states that a burglary is committed when a person *without authority* knowingly enters or *without authority* remains within a building or vehicle with the intent to commit a felony or a theft. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 19—1.) The majority opinion effectively reads the phrase "without authority" out of the statute. "It is a fundamental rule of statutory construction that each provision must, if possible, be given some reasonable meaning." (*People v. Warren* (1977), 69 Ill. 2d 620, 627, 373 N.E.2d 10, 13.) Moreover, "[s]tatutes * * * should be construed, if possible, so that no word is rendered meaningless or superfluous." *People v. Wisslead* (1985), 108 Ill. 2d 389, 394, 484 N.E.2d 1081, 1082.

There can be no doubt that the majority's decision treats the phrase "without authority" as mere surplusage. The majority acknowledges that its decision is based on the limited authority doctrine, which originally evolved from cases involving public buildings. The majority further states that under that doctrine the element of entry without authority need not be established apart from the element of entry with intent to commit a felony or theft, because entry with such an intent is entry "without authority." (*Bailey*, 188 Ill. App. 3d at 285, citing *People v. Perruquet* (1988), 173 Ill. App. 3d 1054, 527 N.E.2d 1334; *People v. Boose* (1985), 139 Ill. App. 3d 471, 487 N.E.2d 1088.) The subsequent extension of the limited authority doctrine to private residences and now to vehicles has, therefore, resulted in judicial amendment of the burglary statute. I believe that in so doing, the majority is invading the province of the legislature. This invasion is particularly disturbing in view of the fact that criminal statutes are to be strictly construed in favor of an accused. *People v. Lutz* (1978), 73 Ill. 2d 204, 212, 383 N.E.2d 171, 174.

I recognize that other appellate courts, and indeed this one, have in the recent past adopted and applied the doctrine of limited authority. It has been extended not only to public buildings, but also to private residences (*People v. Racanelli* (1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179; *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178; *People v. Fisher* (1980), 83 Ill. App. 3d 619, 404 N.E.2d 859), and always the same rationale is given. That rationale is unsound and should be rejected or at least not extended. There is no real reason to refuse to extend the doctrine of limited authority to a van except the recognition that a mistake has been made when it was originally adopted. As Justice Jackson said: "[The Supreme Court is] not final because [it is] infallible, [it is] infallible only because [it is] fi-

298

nal." (*Brown v. Allen* (1953), 344 U.S. 443, 540, 97 L. Ed. 469, 533, 73 S. Ct. 397, 427 (Jackson, J., concurring).) We as an appellate court are neither final nor infallible. We sit as an intermediate appellate court, but even at this level we are somewhat removed from the everyday concerns of humanity. Regardless of that isolation from everyday human concerns, all courts are nevertheless comprised of humans. To make a mistake is human, to fail to recognize a mistake has been made is also human. Both failings are permissible. But to recognize that a mistake has been made and to fail to rectify that mistake may be human, but it is not a permissible action for an appellate court to take. Therefore, we should not extend the doctrine of limited authority to entry into a motor vehicle.

The majority's alternative argument on behalf of affirming is that the defendant is guilty of burglary as an accomplice. The difficulty with this position is that it relies on the identical rationale as the earlier argument on the doctrine of limited authority, *i.e.*, that the defendant had the authority to enter only for lawful purposes and that his (or Roman's) intent to commit burglary vitiated that authority. The evidence in this case establishes that the defendant had full unbridled authority with regard to the van. Possessed of such power over the van he could invite a friend in for a ride to the store, or to a service station, or for any other purpose because his authority was unlimited. When that friend enters the van, he enters *with authority*. The fact that the friend intends to steal from the van does not destroy the authority under which he entered.

To illustrate, I again refer to the example of the two brothers sharing an apartment. If one of the brothers allows a friend to enter the apartment, knowing that the friend intends to steal $5 from his brother's desk, the majority would find that the brother is guilty of burglarizing his own apartment on a theory of accomplice liability. According to the majority's reasoning, the friend's authority to enter cannot include the authority to enter for the purposes of committing a theft, notwithstanding the fact that he was given authority to enter for precisely this reason. Such a conclusion is unsupportable *unless* one accepts the truth of the *premise*: that any entry made for the purpose of committing a theft is "without authority" regardless of a person's actual authority to enter. As I have attempted to demonstrate above, this premise is false.

In closing, I would note, as the majority does, that the second district has not extended the limited authority doctrine to private buildings. I would also note that the supreme court in the recent case of *People v. Simms* (1988), 121 Ill. 2d 259, 520 N.E.2d 308, reviewed the

evidence of entry without authority in a murder—home invasion—residential burglary case. This review of the evidence suggests that the supreme court may not be willing to extend the limited authority doctrine to private homes, because if it were willing to do so, there would have been no necessity to review the sufficiency of the evidence in *Simms*. The court could merely have ruled that the entry with the intent to commit the crime vitiated any consent to enter that may have been given.

In view of the foregoing, I respectfully dissent from that portion of the majority's opinion that affirms the burglary conviction.