THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACOB FISHER *et al.*, Defendants-Appellants.

First District (5th Division)  No. 78-2113

Opinion filed April 25, 1980.

James J. Doherty, Public Defender, of Chicago (Zaven Peter Tokatlian and James H. Reddy, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Wesley H. H. Ching, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants Fisher and Hawkins were indicted for the offenses of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) and armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). Following a jury trial, defendants were found guilty of burglary and not guilty of armed robbery, and were sentenced to four years in the penitentiary.

Their sole issue on appeal is that the State failed to prove beyond a reasonable doubt that they were guilty of the crime of burglary.

James Harris and Jerry Dawkins shared an apartment in Chicago on August 12, 1975. At about 9 that evening, Harris was preparing to attend a party, when he received a phone call from defendant Fisher whom he had known for two or three years. Fisher offered to drop Harris off at the party, and told him that he and some friends would stop by later that evening.

About one hour later, Fisher and two of his friends arrived at the Harris-Dawkins apartment. They rang the doorbell, and Harris pushed the buzzer to let them in the building. As they entered the apartment, Fisher introduced defendant Hawkins as "Sonny" and his other companion as "Mack." Harris seated the three visitors on the living room couch and offered them some wine. After serving the wine, Harris left the room to finish getting ready for the party. Meanwhile, Dawkins, who had been recording music on tape, remained in the living room with defendants and Mack.

When Harris returned to the living room, Hawkins asked to use the washroom. In response to this request, Dawkins went to move his pet dog, which was locked up in the washroom, while Harris remained in the living room listening to music with Fisher and Mack. Dawkins made a phone call from his bedroom, and as he returned the dog to the washroom, he observed Fisher coming from the dining room at the back of the apartment. The two then rejoined the others in the living room.

By this time, defendants and Mack had been in the apartment for 15 to 20 minutes. Mack commented on one of the stereo components, and walked over to where the component was located. He then perched on the radiator, behind the chair where Harris was seated, and inquired about the stereo system. At this point, the testimony of Harris and Dawkins differs considerably from defendants' version of the events that transpired that evening.

According to Harris and Dawkins, Mack suddenly pulled out a silver handgun, placed it to the head of Harris and demanded his money. Hawkins simultaneously held a similar gun to Dawkins. While this happened, Fisher remained on the couch with his hands behind his head and "looked as if he were having the time of his life." Fisher eventually got up, left the room and returned with ties and socks which were used to bind and gag Harris and Dawkins. In addition, a shirt was placed over Harris' head and a towel over Dawkins' head. As they lay face down on the floor, they heard the three assailants rummaging through the apartment. One of them returned to Harris, rolled him over, and removed from his pockets his keys, $150 in cash, his wallet containing credit cards and his wristwatch. Also taken from the apartment were a television set, a hair dryer, a portable radio, another wristwatch and over $400 in cash. Defendants and Mack ransacked the apartment for another 10 minutes before they left.

Moments later, Dawkins managed to break loose, and he untied Harris and told him to call the police. Dawkins then ran out of the building and hailed a passing squad car, which gave chase to the three men. Later, the police arrived, and Harris told them what had happened. That same night, Harris and Dawkins went to the police station and identified Fisher in a lineup.

The testimony of defendants Fisher and Hawkins revealed that Harris was a casual acquaintance of Fisher, with whom he had played chess on several occasions. Fisher had also borrowed money from Harris quite frequently. When Fisher telephoned Harris on the evening in question, he also inquired on behalf of his friend Mack as to whether Harris had any marijuana for sale. Harris told him that he had large quantities of marijuana available for sale in his apartment. Later that evening at the apartment, Dawkins brought a shopping bag full of marijuana from his bedroom, and he and Mack started negotiating the price for a sale. Mack then sampled the marijuana by smoking some, but was not satisfied with the quality and decided not to purchase any. Defendants and Mack then left the apartment.

Once outside, Mack picked up a bag of marijuana off the ground, which he had earlier thrown out the apartment window while Harris and Dawkins were in a different room. Mack placed the bag under his coat with another bag which he had also taken while the occupants of the apartment had momentarily left the living room. Mack offered Fisher a pound of marijuana, and after some hesitation he accepted it and later placed it in a drawer at his home.

On August 13, 1975, Fisher was arrested at his home by two Chicago police officers. The police found a .32-caliber chrome revolver loaded with four live rounds in Fisher's bedroom dresser, along with the marijuana given to Fisher by Mack. After one of the police officers placed Fisher under arrest and informed him of all of the proceeds taken from the Harris-Dawkins apartment on August 12, 1975, Fisher replied, "Those M_____ _____ shorted me" since he had only received $150. At trial, Fisher denied making the statement, and added that neither he nor Hawkins and Mack had a gun with them on the night of August 12, 1975.

Hawkins was arrested at his home on August 26, 1975, by Chicago police officers after Dawkins had picked out his photograph from a photograph collection. One of the arresting officers testified that Hawkins was found hiding in a crawl space attached to a closet in the bedroom of his apartment just prior to his arrest. This testimony was contradicted by Hawkins and his wife, who said that Hawkins was cooperative and made no attempt to hide from the police.

OPINION

Defendants' challenge in the present appeal is specifically directed to the State's alleged failure to prove beyond a reasonable doubt that they possessed the requisite felonious intent at the time they entered the apartment to sustain a conviction for burglary. The burglary statute in question provides in pertinent part:

> "A person commits burglary when without authority he knowingly enters or without authority remains within a building * * * or any

part thereof, *with intent to commit therein a felony or theft * * *."* (Emphasis added.) Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a).

■■ While the law in Illinois no longer requires a common-law breaking as an essential element of the crime of burglary, the statute requires an entry which is both without authority and with intent to commit a felony or theft. (*People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245, *cert. denied* (1969), 395 U.S. 959, 23 L. Ed. 746, 89 S. Ct. 2100.) We shall first address the statutory intent requirement.

A criminal intent formulated after a lawful entry will not satisfy the statute (*Weaver*). The intent must ordinarily be proved circumstantially by inferences drawn from defendant's conduct appraised in its factual environment. (*People v. Collins* (1977), 53 Ill. App. 3d 114, 368 N.E.2d 685.) We hold that the record in the instant case proves beyond a reasonable doubt that defendants possessed the felonious intent mandated by statute at the time they entered the Harris-Dawkins apartment. The behavior of defendants during the evening of August 12, 1975, shows that they acted according to a preconceived plan. Defendant Fisher, a casual acquaintance of Harris, initiated the contact with Harris when he telephoned him that night and offered him a ride to the party. Defendants and Mack arrived together that night in Fisher's car. While at the apartment, defendants were never out of the company of either Harris or Dawkins. Therefore, it is inconceivable that they had the opportunity to confer with one another after they arrived in order to formulate any plan to burglarize the apartment.

■■ Defendants acted swiftly and methodically once they had gained the confidence of Harris and Dawkins. As they sat in the living room listening to music and drinking wine for about 15 minutes, Hawkins and Mack simultaneously pulled guns on Harris and Dawkins. Fisher, lounging on the couch, showed no surprise at the actions of the others. Without a word, he secured ties and socks used to bind and gag Harris and Dawkins. Defendants then quickly ransacked the apartment and carried away a great deal of the occupants' personal property. Based upon these events, we feel that defendants' felonious intent at the time they entered the apartment can be inferred beyond a reasonable doubt from their actions that evening.

As to the second essential element of the crime of burglary, *i.e.*, entry "without authority," we agree with the State that defendants were proven guilty beyond a reasonable doubt.

Although defendants were invited to the Harris-Dawkins apartment for the purpose of a social visit, it cannot be said that their entry was authorized by the occupants for the concealed criminal purposes for which they actually came. Illinois courts have consistently recognized that authority to enter a business building, or other building open to the

public, extends only to those with a purpose consistent with the reason that the building is open. (See, *e.g., Weaver*, 41 Ill. 2d 434, 243 N.E.2d 245) (no authority to enter laundromat for felonious purposes); *People v. Schneller* (1966), 69 Ill. App. 2d 50, 216 N.E.2d 510 (public museum); *People v. Blair* (1972), 52 Ill. 2d 371, 288 N.E.2d 433 (car wash).) Although the burglarized apartment in the present case is not a "public building" as in the above-cited cases, we find that the logic of this line of cases is equally applicable to the matter before us. Because defendants were given authority to enter the apartment for the purpose of a social visit only, the criminal actions they planned were inconsistent with this limited authority, and served to vitiate the consent given for their entry.

In *People v. Woolsey* (1975), 24 Ill. App. 3d 1079, 322 N.E.2d 614, defendant argued that he did not enter the building of his employer "without authority" when he used a key given to him by his employer to gain entry for felonious purposes. In rejecting this argument, the court, citing Annot., 93 A.L.R. 2d 531, 537 (1964), said:

> "While unlimited consent to enter is always a defense against a charge of burglary at common law or under statutes which include in the definition of the offense breaking and entering or the use of force in the entry, *a consent limited as to place, time or purpose is not a defense where entry occurs outside the limitations stated or implied.*" *Woolsey*, 24 Ill. App. 3d 1079, 1082, 322 N.E.2d 614, 617.

Similarly, in the instant case, defendants were given consent to enter the apartment for the limited purpose of a social visit, not to burglarize the premises. Defendants' entry that evening was gained as a result of misrepresentation and subterfuge. While defendants entered the apartment under the pretense of picking up Harris to drop him off at a party, they secretly planned to steal his property. Harris and Dawkins were deceived into allowing defendants into their apartment, and such entry was not in accordance with the will of the occupants and is therefore unauthorized. *United States v. Kearney* (D.C. Cir. 1974), 498 F.2d 61; *People v. Sipult* (1965), 234 Cal. App. 2d 862, 44 Cal. Rptr. 846, *cert. denied* (1966), 384 U.S. 1015, 16 L. Ed. 2d 1036, 86 S. Ct. 1951.

Because we find that defendants were shown to have knowingly entered the apartment both "without authority" and "with intent to commit therein a felony or theft," beyond a reasonable doubt, defendants' conviction for burglary will not be disturbed.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.