THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMANTHA WALKER, Defendant-Appellant.

Third District   No. 3—88—0380

Opinion filed December 7, 1989.

Catherine Fitzsimmons, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Vicki L. Seidl, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Samantha Walker appeals from her convictions for the offenses of residential burglary, robbery, and theft, for which she was sentenced to six years in prison.

Walker, who is black, was tried before a jury in the circuit court of Will County. The State used peremptory challenges to excuse all three black members of the venire, and at the end of the jury selection, defense counsel objected to the racial composition of the jury. The trial judge found that the defendant had established a *prima facie* case of discrimination under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. After the prosecutor stated his reasons for exercising the challenges, the trial court ruled that the State had not systematically excluded minority members of the jury panel on the basis of race.

The testimony at trial disclosed that 90-year-old Willie Wesley invited defendant to stay in his home when she had nowhere else to go. Wesley had known defendant all her life and had raised her mother. After defendant had been there for three days, Wesley became suspicious that she was taking his money, some of which he carried in his shirt pocket and a larger amount in his pants pocket. When he caught her crawling on the floor of his bedroom at 3 a.m. going through some clothing, he ordered her to move out. He did not see her again.

A short time later, defendant was visiting a friend, Rosie Smith, who needed money for a car payment. Defendant and Rosie Smith happened to meet two brothers, Terrion and Toroyana Caruth, whom they knew, in the hallway of an apartment building. At defendant's request, the men agreed to go to Wesley's home. The women stayed in the car while the young men went to the door and asked Wesley if they could use his phone because they had had an accident. He let them in, and after making a telephone call, the two left only to return a short time later. Again they asked to use the telephone, and Wesley let them in. While one man went to the telephone, the other grabbed Wesley from behind, took $9,000 out of the hip pocket of his pants, and threw him to the floor. Both men then ran out to the car and drove away. Defendant and Rosie Smith each received $2,000 while the Caruth brothers divided the rest of the money.

When defendant was first questioned, she denied any involvement in the robbery and said she had heard about the robbery through the newspapers. A few days later during a subsequent interrogation, defendant related the facts as set forth above. At trial, defendant presented no evidence, and the jury returned a verdict of guilty on the charges of burglary, robbery, and theft. After sentencing, this appeal was perfected.

Defendant first contends that the State did not meet its burden of establishing a racially neutral reason for each of the excluded black jurors, particularly Mrs. Linda Gant. As to the other two, Corda Page was excused because he had voted "not guilty" while serving on a criminal jury four years earlier in a case which ended in a mistrial, and Leon Harvey was excused because his 17-year-old daughter had been convicted of theft. We agree with the trial court that in both of these cases, the reasons given were racially neutral.

As to Gant, the prosecutor gave several reasons including the fact that the State's Attorney's office has had a number of cases where the defendant's last name was "Gant" and that she answered the *voir dire* questions very quickly without any time for reflection. Furthermore, she lived near the crime scene and had a 14-year-old daughter who might have known defendant. Also, Gant is employed by the Illinois State Police at the Joliet crime lab, which the prosecutor felt could be a potential problem.

Defendant argues that these reasons are "shams." She asserts that Gant's address in Joliet is about three miles from Wesley's home in Lockport and, in the footnote of her brief, asks this court to take judicial notice of the distance between the streets involved. Defendant argues that there is nothing to indicate that she and Gant's daughter were in school together. Defendant also disparages the other reasons given by the State. It is not necessary for us to analyze these arguments, however, because, in our view, the State met its burden when it pointed out the fact that Gant is employed by the Illinois State Police at the Joliet crime lab.

Defendant asserts that the State accepted a white juror whose son is employed by the Will County sheriff's department, which indicates that the prosecutor's excuse as to Gant was not racially neutral, and she further asserts that Gant is a data entry operator, not directly involved with forensic evidence, and hence, would have no bias specific to this case.

In determining whether the prosecutor's reasons were legitimate and racially neutral, we recognize that "the prosecutor's explanation need *not* rise to the level of justifying exercise of a challenge

for cause." (*People v. Talley* (1987), 152 Ill. App. 3d 971, 987, 504 N.E.2d 1318, 1328, citing *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) In our view, Gant's employment by a law enforcement agency was sufficient reason to excuse her as a potential juror even though her specific duties did not relate to the case to be decided. Certainly the prosecutor may excuse a potential juror whose possible bias in favor of the State might jeopardize the fairness of defendant's trial and might even result in a reversal on appeal. As to the white juror who was accepted, employment of his son by a law enforcement agency is less likely to affect the juror's allegiance than would the juror's own employment. The trial court's finding that the prosecutor had not systematically excluded minority persons from the jury because of their being members of a minority was not contrary to the manifest weight of the evidence.

Next, defendant contends that she was not proven guilty of residential burglary beyond a reasonable doubt since the evidence established that the victim gave the Caruth brothers permission to enter his home. The crime of residential burglary is defined as follows:

> "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." (Ill. Rev. Stat. 1987, ch. 38, par. 19—3(a).)

Since Wesley himself testified that he gave the two men permission to enter his home to use his telephone, defendant argues that the State failed to prove the absence of authority to enter.

Illinois courts have rejected this argument numerous times. In *People v. Woolsey* (1975), 24 Ill. App. 3d 1079, 1082, 322 N.E.2d 614, 617, the court quoted with approval 93 A.L.R.2d 531, 537 (1964), as follows:

> "While unlimited consent to enter is always a defense against a charge of burglary at common law or under statutes which include in the definition of the offense breaking and entering or the use of force in the entry, a consent limited as to place, time, or purpose is not a defense where entry occurs outside the limitations stated or implied."

*Woolsey* involved a burglary of a roofing business and the theft of materials and two vehicles committed at 3 a.m. by an employee who had a key for use in connection with his work. The reviewing court held that the State had proved beyond a reasonable doubt that the defendant had acted without authority and upheld the conviction for burglary.

In *People v. Fisher* (1980), 83 Ill. App. 3d 619, 404 N.E.2d 859,

this same ruling was applied to a residential burglary. Fisher and two companions arranged to pick up the victim at his apartment to go to a party together. When they arrived, the victim served them some wine and visited with them, until they pulled guns and proceeded to ransack the apartment and take money, appliances, watches, and wallets from the victim and his roommate, who were bound and gagged by the assailants. The defendants' convictions for burglary were upheld, with the court stating:

"[D]efendants were given consent to enter the apartment for the limited purpose of a social visit, not to burglarize the premises. Defendants' entry that evening was gained as a result of misrepresentation and subterfuge. While defendants entered the apartment under the pretense of picking up [one victim] to drop him off at a party, they secretly planned to steal his property. [The victims] were deceived into allowing defendants into their apartment, and such entry was not in accordance with the will of the occupants and is therefore unauthorized." 83 Ill. App. 3d at 623, 404 N.E.2d at 863.

Accord *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179; *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178.

■ In the case before us, when Wesley permitted the Caruth brothers to come into his home to use the telephone to summon help, he was authorizing their presence for a specific purpose. Once one of the men attacked him and took his money from his person and his home, that authorization ended. The evidence established beyond a reasonable doubt that the Caruth brothers entered with the intent to commit a robbery and that such entry was unauthorized.

Defendant's final assertion of error concerns her sentencing. Defendant contends that the trial court improperly took into account all three of her convictions (theft, robbery, and residential burglary) at the time the six-year sentence was imposed. She relies upon the fact that, where theft and robbery convictions are based upon the same physical act, the theft conviction must be vacated. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) She seeks to have this cause remanded for resentencing.

■ Defendant is correct that separate convictions for robbery and theft arising out of the same physical act are improper. Here the jury returned verdicts of guilty for three crimes, and judgment was entered on all verdicts. The mittimus to the Department of Corrections also lists defendant's conviction for all three crimes. No order vacating the theft conviction appears in the record, and hence, that conviction must be vacated here.

The transcript of sentencing hearing discloses that defense counsel advised the court that the theft conviction should "merge into the robbery for sentencing purposes," and recommended that the court "impose one sentence on the robbery and the residential burglary." The State's Attorney agreed that the theft merges into the robbery, and the trial judge stated, "That would be my thought."

We conclude from the record that the trial court did not take into account the theft conviction in sentencing defendant to six years. Resentencing is not necessary where there is no indication that the sentencing court considered the vacated conviction. (*People v. Sanford* (1983), 119 Ill. App. 3d 160, 456 N.E.2d 333.) Here the indication is that the trial court did not consider the theft conviction.

We vacate the conviction for theft and affirm the convictions and sentence for residential burglary and robbery.

Affirmed in part; vacated in part.

WOMBACHER, P.J., and HEIPLE, J., concur.