In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1224

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMY GLISPIE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cr-10002-JES-JEH-1 — **James E. Shadid**, *Judge.*

ARGUED SEPTEMBER 25, 2019 — DECIDED NOVEMBER 19, 2019

Before RIPPLE, ROVNER, and BRENNAN, *Circuit Judges.*

RIPPLE, *Circuit Judge.* On January 23, 2018, the Government filed a single-count indictment against Jeremy Glispie for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Mr. Glispie entered a plea of guilty, but reserved the right to challenge his anticipated designation as an armed career criminal based on his prior convictions for residential burglary under Illinois law. Following our guidance, the district court concluded that residential burglary in

Illinois is no broader than "generic burglary" and that it therefore qualifies as a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii). Consequently, it sentenced Mr. Glispie as an armed career criminal and imposed a sentence of 180 months.

Before this court, Mr. Glispie renews his objection to his designation as an armed career criminal based on his convictions for residential burglary under Illinois law. Acknowledging that our decision in *Dawkins v. United States*, 809 F.3d 953 (7th Cir. 2016), is controlling, he urges us to revisit that decision. According to Mr. Glispie, *Dawkins* did not explore all of the relevant aspects of Illinois burglary. Had we fully considered the question, he submits, we would have reached the conclusion that residential burglary in Illinois covers a broader swath of conduct than generic burglary for purposes of the ACCA and, therefore, cannot be used as a predicate offense for purposes of the ACCA.

After considering the briefs and hearing oral argument, we conclude that Mr. Glispie has raised an important issue that has not been considered fully: whether the limited-authority doctrine applies to the Illinois residential burglary statute. As we will explain, if the limited-authority doctrine applies to residential burglary, then a conviction for Illinois residential burglary is broader than generic burglary and cannot qualify as an aggravated felony for purposes of the ACCA. If, however, the limited-authority doctrine does not apply to Illinois residential burglary, then a conviction under that statute is no broader than generic burglary and qualifies as an aggravated felony. Because the Supreme Court of Illinois has not made this determination, and because the question is likely to arise frequently and to affect

the administration of justice in both the state and federal courts, we respectfully seek the assistance of the Supreme Court of Illinois by certifying this controlling question of law.[1]

**I**.

Whether Mr. Glispie's convictions qualify as violent felonies under the ACCA requires us to look at the elements of generic burglary under the ACCA as well as the elements of residential burglary under Illinois law. We turn first to the ACCA, then to Illinois law, and finally to our cases that have addressed the intersection of the two.

### A. Generic Burglary under the ACCA

The ACCA "increases the sentences of certain federal defendants who have three prior convictions 'for a violent felony.'" *Descamps v. United States*, 570 U.S. 254, 257 (2013) (quoting 18 U.S.C. § 924(e)). For purposes of the ACCA, a violent felony is 1) a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or 2) "burglary, arson, … extortion, [or] involves the use of explosives." 18 U.S.C. § 924(e)(2)(B).[2]

---

[1] Because our decision calls into question our decision in *Dawkins v. United States*, 809 F.3d 953 (7th Cir. 2016), we have circulated it to all judges in active service in accordance with Circuit Rule 40(e). No judge in active service requested to hear this case en banc.

[2] Prior to *Johnson v. United States*, 135 S. Ct. 2551 (2015), if a defendant's conviction was not one of the enumerated offenses, it still might have qualified as a violent felony if it "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." 18 U.S.C.

(continued … )

To determine whether a past conviction qualifies as one of the enumerated offenses, courts employ the categorical approach:

> They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.

*Descamps*, 570 U.S. at 257.

The Supreme Court has addressed the definition of generic burglary under the ACCA on several occasions. In *Taylor v. United States*, 495 U.S. 575, 598 (1990), the Court held, for the first time, that burglary as set forth in § 924(e)(2)(B) meant "'burglary' [in] the generic sense in which the term is now used in the criminal codes of most States." The Court further explained that, "[a]lthough the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* The Court then turned to "the problem of applying this conclusion to cases in which the state statute under which a defendant is convicted varies from the generic definition of 'burglary.'" *Id.* at 599. It concluded that "the only plausible interpretation of

---

( … continued)
§ 924(e)(2)(B)(ii). However, *Johnson* held that this "residual" clause of § 924(e)(2)(B) was unconstitutionally vague. 135 S. Ct. at 2563.

§ 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. If the statutory definition of the prior crime of conviction is narrower than generic burglary, or has "minor variations in terminology," *id.* at 599, it qualifies under § 924(e)(2)(B)(ii) as a violent felony. If the definition in the state statute is broader than generic burglary, for instance, "by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings," a conviction under that statute would not qualify as a predicate under the ACCA. *Id.* This process of comparing the elements of the generic crime to those set forth in the state statute of conviction has come to be known as the "categorical approach."

The Court also spoke directly to the requirements of generic burglary in *Descamps*. The precise issue before the Court in *Descamps* focused on what legal authorities and record documents may be used to determine whether an offense qualifies as one of the enumerated generic offenses under the ACCA. Specifically, the Court addressed whether a sentencing court may "decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy our categorical test." *Descamps*, 570 U.S. at 258. In *Descamps*, the Government had asked the district court to impose an enhanced sentence under the ACCA based in part on the defendant's conviction

for burglary under California law.[3] The law "provides that a 'person who enters' certain locations 'with intent to commit grand or petit larceny or any felony is guilty of burglary.'" *Id*. at 258–59. The Court noted that the "statute does not require the entry to have been unlawful in the way most burglary laws do. Whereas burglary statutes generally demand breaking and entering or similar conduct, California's does not: It covers, for example, a shoplifter who enters a store, like any customer, during normal business hours." *Id*. at 259. "In sweeping so widely," the Court continued, "the state law goes beyond the normal, 'generic' definition of burglary." *Id*. At the trial level, Descamps had argued that this "asymmetry of offense elements precluded his conviction … from serving as an ACCA predicate, whether or not his own burglary involved an unlawful entry that could have satisfied the requirements of the generic crime." *Id*. The district court, however, had disagreed. Looking beyond the statutory elements of the offense to Descamps's actual conduct, the district court concluded that Descamps's conduct satisfied the generic definition of burglary for purposes of the ACCA.

The Supreme Court, however, held that the district court had erred in deviating from the categorical approach. The Court explained that the "modified categorical approach" employed by the district court "helps implement the categorical approach when a defendant [has been] convicted of violating a divisible statute." *Id*. at 263. If the statute is not divisible—does not "comprise[] multiple, alternative ver-

---

[3] The law at issue was section 459 of the California Penal Code Annotated.

sions of the crime"—the modified categorical approach simply does not apply. *Id*. at 262–64. The Court therefore concluded that, in Descamps's case, the modified approach had no role to play because "[t]he dispute here does not concern any list of alternative elements. Rather," the Court continued,

> it involves a simple discrepancy between generic burglary and the crime established in § 459. The former requires an unlawful entry along the lines of breaking and entering. The latter does not, and indeed covers simple shoplifting … . In *Taylor*'s words, then, § 459 "define[s] burglary more broadly" than the generic offense. And because that is true—because California, to get a conviction, need not prove that Descamps broke and entered—a § 459 violation cannot serve as an ACCA predicate. Whether Descamps *did* break and enter makes no difference. And likewise, whether he ever admitted to breaking and entering is irrelevant. … We know Descamps' crime of conviction, and it does not correspond to the relevant generic offense. Under our prior decisions, the inquiry is over.

*Id*. at 264–65 (citations and parallel citations omitted); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016) (observing that, in *Descamps*, it had "found that a California statute swept more broadly than generic burglary because it criminalized entering a location (even if lawfully) with the intent to steal, and thus encompassed mere shoplifting").

Following *Descamps*, the Court twice has addressed the elements of generic burglary. In *United States v. Stitt*, 139 S. Ct. 399 (2018), the Court considered "whether the statutory term 'burglary' includes burglary of a structure or vehicle that has been adapted or is customarily used for overnight accommodation." *Id*. at 403–04. The Court held that it does. The Court noted that it had been "clear in *Taylor* that Congress intended the definition of 'burglary' to reflect 'the generic sense in which the term [was] used in the criminal codes of most States' at the time the Act was passed." *Id.* at 406 (quoting *Taylor*, 495 U.S. at 598). At that time, "a majority of state burglary statutes covered vehicles adapted or customarily used for lodging—either explicitly or by defining 'building' or 'structure' to include those vehicles." *Id.* Additionally, Congress

> viewed burglary as an inherently dangerous crime because burglary "creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." An offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation.

*Id.* (citations omitted) (quoting *Taylor*, 495 U.S. at 588). The second case, *Quarles v. United States*, 139 S. Ct. 1872 (2019), decided just last term, addressed "[t]he exceedingly narrow question"

> whether remaining-in burglary[4] (i) occurs on-
> ly if a person has the intent to commit a crime
> *at the exact moment* when he or she *first* unlaw-
> fully remains in a building or structure, or (ii)
> more broadly, occurs when a person forms the
> intent to commit a crime *at any time* while un-
> lawfully remaining in a building or structure.

*Id*. at 1875. The Court concluded it was the latter. Moving from general to specific, the Court "sum[med] up" its hold-ing accordingly:

> The Armed Career Criminal Act does not de-
> fine the term "burglary." In *Taylor*, the Court
> explained that "Congress did not wish to speci-
> fy an exact formulation that an offense must
> meet in order to count as 'burglary' for en-
> hancement purposes." And the Court *recog-*

---

[4] In *Quarles v. United States*, 139 S. Ct. 1872 (2019), the Court explained the origin of "remaining-in" burglary. "At common law," it noted, "bur-glary was confined to unlawful breaking and entering a dwelling at night with the intent to commit a felony. But by the time Congress passed … the current version of § 924(e) in 1986, state burglary statutes had long since departed from the common-law formulation." *Id.* at 1876–77. By that time, States not only had "cast[] off relics like the requirement that there be a breaking, or that the unlawful entry occur at night," but a majority of States also "prohibited unlawfully 'remaining in' a building or structure with intent to commit a crime. Those remaining-in statutes closed a loophole in some States' laws by extending burglary to cover situations where a person enters a structure lawfully but stays unlawful-ly—for example, by remaining in a store after closing time without per-mission to do so." *Id*. at 1877; *see also infra* note 12 (discussing interpreta-tion of "remaining-in" burglary under Illinois law).

> *nized* that the definitions of burglary "vary" among the States. The *Taylor* Court therefore interpreted the generic term "burglary" in § 924(e) in light of: the ordinary understanding of burglary as of 1986; the States' laws at that time; Congress' recognition of the dangers of burglary; and Congress' stated objective of imposing increased punishment on armed career criminals who had committed prior burglaries. Looking at those sources, the *Taylor* Court interpreted generic burglary under § 924(e) to encompass remaining-in burglary. Looking at those same sources, we interpret remaining-in burglary under § 924(e) to occur when the defendant forms the intent to commit a crime at any time while unlawfully present in a building or structure.

*Id*. at 1879 (quoting *Taylor*, 495 U.S. at 599, 598).

Drawing from these cases, generic burglary requires "at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. "[O]ther structure[s]" include a vehicle "that has been adapted or is customarily used for overnight accommodation." *Stitt*, 139 S. Ct. at 403–04. Regardless of the type of structure, however, the entry itself must be unlawful; an intent to later commit a crime or theft, without more, does not

meet this requirement. *Descamps*, 570 U.S. at 264–65; *Mathis*, 136 S. Ct. at 2248–49.[5]

### B. Illinois Residential Burglary

The next step in the categorical approach requires us to determine the elements of residential burglary under Illinois law. Mr. Glispie asserts that, unlike generic burglary, Illinois residential burglary "does not require an unlawful or unauthorized entry, separate and apart from an entry or remaining with intent to commit a crime."[6] To determine the scope of the Illinois residential burglary statute, we look to the language of the statute as it has been interpreted by the Illinois courts. *See Mathis v. United States*, 136 S. Ct. at 2256 (stating that the "threshold inquiry" whether listed items in a criminal statute are "elements or means" had been settled by a decision of the Iowa Supreme Court, and, "[w]hen a ruling of that kind exists, a sentencing judge need only follow what

---

[5] *See also United States v. Mungro*, 754 F.3d 267, 271 (4th Cir. 2014) (observing that, if North Carolina's law prohibiting "breaking or entering" "cover[ed] any entry into the building with the intent to commit a crime, even when a person enters with the building owner's consent," then this might "disqualify it as a predicate offense because 'generic burglary's unlawful-entry element excludes any case in which a person enters premises open to the public, no matter his intent'" (quoting *Descamps v. United States*, 570 U.S. 254, 275 (2013)); *United States v. Hiser*, 532 F. App'x 648, 648 (9th Cir. 2013) (holding that the defendant's two prior convictions for burglary under Nevada law did not qualify as generic burglaries because "Nevada's burglary statute is facially broader than the generic definition of burglary because it 'does not require the entry to have been unlawful in the way most burglary laws do'" (quoting *Descamps*, 570 U.S. at 259)).

[6] Appellant's Br. 16.

it says"); *Smith v. United States*, 877 F.3d 720, 723 (7th Cir. 2017) (relying on a decision of the Illinois Appellate Court to conclude that the definition of dwelling under the Illinois residential burglary statute excludes vehicles other than occupied trailers and therefore is not broader than generic burglary).[7]

---

[7] We note that, in *Descamps*, 570 U.S. at 275, the Court "reserve[d] the question whether, in determining a crime's elements, a sentencing court should take account not only of the relevant statute's text, but of judicial rulings interpreting it." However, the Supreme Court has relied explicitly on statutory interpretations by state supreme courts in applying the categorical and modified categorical approaches. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016); *Johnson v. United States*, 559 U.S. 133, 138 (2010) (stating that the Court was "bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements" of Florida battery in assessing whether a conviction under that statute "meets the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B)(i)"). Additionally, it has been the regular practice of this court, as well as other Courts of Appeals, to rely on state courts' interpretations of statutes in addressing questions of the breadth of state law. *See, e.g.*, *Smith v. United States*, 877 F.3d 720, 723 (7th Cir. 2017); *United States v. Aparicio-Soria*, 740 F.3d 152, 154 (4th Cir. 2014) (en banc) ("To the extent that the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains our analysis of the elements of state law." (citing *Johnson*, 559 U.S. at 138)); *United States v. Tighe*, 266 F.3d 1187, 1196 (9th Cir. 2001) (explaining that "[a] state court's interpretation of a statute is binding in determining whether the elements of generic burglary are present" and adhering to a decision of the Supreme Court of South Dakota defining the elements of burglary under the state statute).

The Illinois residential burglary statute[8] provides, in relevant part:

> A person commits residential burglary when he or she knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft. This offense includes the offense of burglary as defined in Section 19-1.

720 ILCS 5/19-3(a). Mr. Glispie admits that, "[o]n its face, the statute appears to require not only that the State prove that a defendant had intent to commit a crime at the time of entry, but also that the entry be 'without authority.'"[9] Nevertheless, he contends that Illinois courts have "effectively … collapsed" the "without authority" element with the "intent to commit a crime" element with the result that "the State need not prove unlawful presence apart from proof of the defendant's intent."[10] This interpretation has its origins in *People v. Weaver*, 243 N.E.2d 245, 248 (Ill. 1968).

In *Weaver*, the defendant had entered a laundromat with the intent to steal coins from the vending machines inside.

---

[8] Mr. Glispie acknowledges that this was the language of the residential burglary statute at all times relevant to his underlying convictions. *See* Appellant's Br. 13.

[9] *Id.*

[10] *Id.* at 18 (emphasis removed) (quoting *People v. Rudd*, 970 N.E.2d 580, 583 (Ill. App. Ct. 2012)).

He was charged and convicted under the Illinois burglary statute.[11] On appeal, he argued that, because the laundromat was open to the public at the time in question, "he could have entered as a business invitee," and, therefore, his entry "in the store [wa]s as consistent with his innocence as with his guilt." *Weaver*, 243 N.E.2d at 248. The Supreme Court of Illinois rejected this argument:

> While a common-law breaking is no longer an essential element of the crime of burglary, the statute requires an entry which is both without authority and with intent to commit a felony or theft. A criminal intent formulated after a lawful entry will not satisfy the statute. But authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. An entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat.

*Id*. (citations omitted). *Weaver* thus established that one who enters a public building with the intent to commit a crime

---

[11] The Illinois burglary statute provides, in relevant part: "A person commits burglary when without authority he or she knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4-102 of the Illinois Vehicle Code." 720 ILCS 5/19-1(a).

automatically satisfies the unlawful entry requirement of the Illinois burglary statute.

Since *Weaver*, the Supreme Court of Illinois and Appellate Court of Illinois consistently have applied this principle—the limited-authority doctrine—to burglary of public establishments.[12] *See People v. Blair*, 288 N.E.2d 443, 445 (Ill.

---

[12] The Supreme Court of Illinois, however, has held that the limited-authority doctrine does not apply to burglary by remaining. *See People v. Bradford*, 50 N.E.3d 1112 (Ill. 2016). In *Bradford*, the defendant had been convicted of burglary under 720 ILCS 5/19-1(a) for "knowingly and without authority remain[ing] within the building of Walmart, with the intent to commit therein a felony or a theft.'" *Id*. at 1113–14 (alterations in original). Before the Supreme Court of Illinois, he argued that he had not satisfied the elements of the crime because

> he never exceeded the scope of his physical authority to be in the Walmart. He contend[ed] that burglary by remaining is not intended to apply to ordinary shoplifting. Rather, it refers to situations in which a person lawfully enters a place of business, but, in order to commit a theft or felony: (1) hides and waits for the building to close; (2) enters an unauthorized area within the building; or (3) continues to remain on the premises after being asked to leave. Since defendant lawfully entered the Walmart during regular business hours, shoplifted merchandise within public areas of the store, and left while the store was still open, defendant argues that he committed retail theft, … rather than burglary … .

*Id*. at 1117. On the authority of *People v. Weaver*, 243 N.E.2d 245 (Ill. 1968), however, the State maintained "that an individual who engages in a 'discrete act of remaining' within a store with the intent to commit a theft is guilty of burglary by remaining." *Bradford*, 50 N.E.3d at 1117. The state supreme court, however, rejected this contention. The court explained that "it [wa]s not clear what evidence would be sufficient to establish

(continued … )

1972) (quoting *Weaver*, 243 N.E.2d at 248, for the proposition that "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open"); *see also People v. Rudd*, 970 N.E.2d 580 (Ill. App. Ct. 2012) (explaining that, "in the context of a building open to the public, … the permission to enter does not extend to people who enter for purposes that are inconsistent with the purpose for which the building is open to the public," and, therefore,

---

( … continued)

that a defendant 'remains' within a public place in order to commit a theft." *Id*. at 1118. Extending the doctrine to "remaining-in" burglary also would "arbitrarily distinguish[] between a defendant who shoplifts one item in a store and leaves immediately afterwards and a defendant who shoplifts more than one item or lingers inside a store before leaving." *Id*. Consequently, the court concluded that "burglary by remaining includes situations in which an individual enters a public building lawfully, but, in order to commit a theft or felony, (1) hides and waits for the building to close, (2) enters unauthorized areas within the building, or (3) continues to remain on the premises after his authority is explicitly revoked." *Id*. at 1120 (citations omitted).

After *Bradford*, one state appellate court interpreted that decision to eliminate the limited-authority doctrine for unlawful-entry burglary as well as remaining-in burglary, "effectively overrul[ing]" *Weaver* and its progeny. *See People v. Johnson*, 94 N.E.3d 289, 294 (Ill. App. Ct. 2018). However, in *People v. Johnson*, No. 123318, 2019 WL 3559640, at *11 (Ill. Aug. 1, 2019), the Supreme Court of Illinois reversed the appellate court's decision and reaffirmed *Weaver*. *See infra* pp. 16–17 (discussing the decision of the Supreme Court of Illinois in *Johnson*). In *Johnson*, 2019 WL 3559640, at *5, the Supreme Court of Illinois explicitly noted that "none of the concerns expressed in *Bradford* apply to burglary involving an unauthorized entry based on the intent to commit retail theft." *See also infra* pp.16–17.

"the State need not prove unlawful presence apart from proof of the defendant's intent"); *People v. Smith*, 637 N.E.2d 1128, 1131 (Ill. App. Ct. 1994) (observing that "under Illinois law a burglary can occur during business hours in a building open to the public" and that such convictions must rest upon evidence "sufficient to show an intent to commit a felony or theft at the time of entry onto the premises of the business establishment"), *remanded on other grounds*, 643 N.E.2d 198 (Ill. 1994). Most recently, in *People v. Johnson*, No. 123318, 2019 WL 3559640 (Ill. Aug. 1, 2019), the Supreme Court of Illinois reaffirmed *Weaver*; it stated:

> *Weaver* construed the current burglary statute over 50 years ago (and 7 years after it was enacted) as granting a patron of a building open to the public only limited authority to enter the establishment for a "purpose consistent with the reason the building is open." *Weaver*, 243 N.E.2d [at 248]. And "[a]n entry with intent to commit a theft cannot be said to be within the authority granted patrons." *Id.* The appellate court has consistently, and quite correctly, applied this holding to open retail shops. And while the General Assembly has amended the burglary statute a number of times in the half-century since *Weaver* was decided, it has never acted to reverse *Weaver* and its progeny's interpretation of the statute. When the legislature does not address by way of amendment a judicial construction of a statute by this court, it is presumed that the legislature has acquiesced in that interpretation and such a con-

> struction becomes as much a part of the statute as if plainly written into it.

*Johnson*, 2019 WL 3559640, at *7 (citations and parallel citations omitted).

The Supreme Court of Illinois also has held that the limited-authority doctrine applies to the Illinois home-invasion statute, which, like the residential burglary statute, has as an element that the defendant "without authority … knowingly enter[] the dwelling place of another." 720 ILCS 5/19-6. Specifically, in *People v. Bush*, 623 N.E.2d 1361, 1364 (Ill. 1993), the Supreme Court of Illinois stated:

> In [*People v.* ]*Peeples*, [616 N.E.2d 294 (Ill. 1993),] this court stated that when a defendant comes to a private residence and is invited in by the occupant, the authorization to enter is limited and that criminal actions exceed this limited authority. No individual who is granted access to a dwelling can be said to be an authorized entrant if he intends to commit criminal acts therein, because, if such intentions had been communicated to the owner at the time of entry, it would have resulted in the individual's being barred from the premises *ab initio.* Thus, the determination of whether an entry is unauthorized depends upon whether the defendant possessed the intent to perform a criminal act therein at the time entry was granted. If, as in *Peeples*, the defendant gains access to the victim's residence through trickery and deceit and with the intent to commit criminal acts, his entry is unauthorized and the consent given viti-

> ated because the true purpose for the entry exceeded the limited authorization granted. Conversely, where the defendant enters with an innocent intent, his entry is authorized, and criminal actions thereafter engaged in by the defendant do not change the status of the entry.

*Bush*, 623 N.E.2d at 1364 (citations omitted).

Although the Supreme Court of Illinois has applied this doctrine consistently to entry of public buildings under the burglary statute and to entry of dwellings under the home-invasion statute, it never has addressed whether the doctrine applies to entry of dwellings under the *residential* burglary statute, the statute under which Mr. Glispie was convicted. The issue was raised in *People v. Wilson*, 614 N.E.2d 1227 (Ill. 1993), but the Supreme Court of Illinois neither reached nor resolved the issue, *see id*. at 1231.

The majority of Illinois Appellate Courts,[13] however, *have extended* this doctrine to the residential burglary statute. *See, e.g.*, *People v. Walker*, 547 N.E.2d 1036, 1038–39 (Ill. App. Ct. 1989) (noting that the defendants were permitted into the victim's home for a specific purpose, but that the evidence "established beyond a reasonable doubt that the Caruth

---

[13] The Government argues that decisions from the Supreme Court of Illinois are the only authoritative source for determining the meaning of a state statute. *See* Gov't's Br. 17. Although it is true that only state supreme court cases bind this court, state appellate court decisions nevertheless provide significant guidance. Indeed, in *Smith*, 877 F.3d at 723, we relied on an Illinois Appellate Court opinion to determine the "dwelling" requirement of the Illinois residential burglary statute.

brothers entered with the intent to commit a robbery and that such entry was unauthorized"); *People v. Fisher*, 404 N.E.2d 859, 862 (Ill. App. Ct. 1980) (applying doctrine to burglary of an apartment); *see also, e.g.*, *People v. Hodge*, No. 5-11-0082, 2012 WL 7070081, at *4 (Ill. App. Ct. Dec. 3, 2012) (unpublished) ("[A]ssuming *arguendo* that the State did not meet its burden of proof regarding the defendant's authority to enter the home, this court nevertheless agrees with the State that the defendant would have forfeited such authority under the 'limited authority' doctrine" because the defendant "had intent to perform a criminal act at the time entry was granted.").[14]

Despite these authorities, the Government maintains that there is little indication that the Supreme Court of Illinois

---

[14] Mr. Glispie notes that the second district appellate court is the lone holdout for requiring "separate proof of unauthorized entry, apart from a contemporaneous intent to commit a theft or felony." Reply Br. 13. He submits, however, that given that appellate court's decision in *People v. Dillavou*, 958 N.E.2d 1118, 1121–22 (Ill. App. Ct. 2011), it "appears to have fallen in line with its sister districts." Reply Br. 13. In *Dillavou*, however, the defendant was not convicted of residential burglary based on entering without authority; "[r]ather, defendant was convicted under the second part of the residential burglary statute": "'knowingly and without authority *remain[ing] within*'" the victim's home. 958 N.E.2d at 1121 (alteration in original) (emphasis added). Thus, *Dillavou* did not address the critical issue—whether the first prong of the burglary statute requires "separate proof of unauthorized entry, apart from a contemporaneous intent to commit a theft or felony." Indeed, in *Dillavou*, the court did not even reach the question whether "the limited-authority doctrine applies to defendants charged with residential burglary by remaining without authority." *Id.* at 1123. *Dillavou*, therefore, does not convince us that the second district appellate court has altered its course.

would agree with the appellate courts that the limited-authority doctrine applies to residential burglary. First, it notes that the Supreme Court of Illinois "expressly declined to consider" the issue in *Wilson*, 614 N.E.2d at 1231.[15] The Government, however, has not come forward with any authority suggesting that the court's action in *Wilson*—postponing resolution of an issue until it is necessary for disposition of a case before it—is evidence that the Supreme Court of Illinois would be unwilling, in the appropriate case, to extend the limited-authority doctrine to residential burglary. Second, the Government contends that the state supreme court's discussion in *Johnson* "emphasized that its rationale and holding were restricted to the commercial context."[16] This is not surprising, however, because *Johnson* involved a conviction for burglary of a department store. The court had neither the opportunity, nor any reason, to speak in broader terms. Third, the Government submits that there are "essential differences between commercial establishments and residences, in relation to the presence of other persons, [that] militate against any assumption that the state supreme court would apply the limited-authority doctrine to residential burglary."[17] This argument would have more force if the Supreme Court of Illinois had not applied the doctrine to the home-invasion statute. As the Supreme Court of Illinois already has extended the doctrine to home invasion, however, it is unlikely that it would be persuaded by a

---

[15] Gov't's Br. 14.

[16] *Id.* at 27.

[17] *Id.* at 28.

commercial-residential distinction. Moreover, in *Bush*, the Supreme Court of Illinois relied in part on *People v. Hudson*, 448 N.E.2d 178 (Ill. Ct. App. 1983), for the proposition that the "interpretation of language 'without authority' in [the] home invasion statute should be consistent with [the] meaning given [the] same language in [the] burglary statute." *Bush*, 623 N.E.2d at 1364. By extension, the "without authority" language in the residential burglary statute[18] should be given the same meaning as that of the burglary and home-invasion statutes.[19]

---

[18] *See supra* p.12 (setting forth the language of the residential burglary statute).

[19] The Government also argues that extending the limited-authority doctrine to residential burglary would render subsection (a-5) of that statute superfluous. *See* Gov't's Br. 30. Subsection (a-5), added to the statute in 2010, provides that "[a] person commits residential burglary when he or she falsely represents himself or herself … for purpose of gaining entry to the dwelling place of another, with the intent to commit therein a felony or theft *or to facilitate the commission therein of a felony or theft by another*." 720 ILCS 5/19-3(a-5) (emphasis added). The Government maintains that "[a]pplying the limited-authority doctrine to residential burglary, and thus permitting courts to infer unauthorized entry or remaining merely from the burglar's intent, would essentially eliminate the separate element of unauthorized entry or remaining from cases under subsection (a), rendering subsection (a-5) unnecessary." Gov't's Br. 30–31. If the limited-authority doctrine applies to residential burglary, there may be *some* overlap between subsections (a) and (a-5); nevertheless subsection (a-5) still would encompass situations that subsection (a) would not. An individual violates subsection (a-5) when his entry of a dwelling is either with "intent to commit therein a felony or theft," *or* "with the intent … to facilitate the commission therein of a felony or theft by another." Subsection (a-5) therefore encompasses individuals who have no

(continued … )

Thus, the weight of Illinois cases, as well as principles of statutory interpretation, suggest that the limited-authority doctrine applies to residential burglary, just as it does to burglary and to home invasion. If that is the case, and proof of "intent to commit … a felony or theft" also satisfies the element of entering "without authority," then Illinois residential burglary is broader than generic burglary under the ACCA[20] and cannot be used as a predicate offense for an increased sentence under the ACCA.

## II.

Given the frequency with which this issue arises, the possible impact of its resolution on Illinois citizens, and the importance of this issue in the application of the ACCA in this circuit, we believe the appropriate course of action is to certify this controlling issue of law to the Supreme Court of Illinois. The principle impediment to our pursuing this course is our prior decision of *Dawkins v. United States*, 809 F.3d 953 (7th Cir. 2016), which addressed the scope of entering "without authority" under the Illinois burglary statutes. The Government maintains that *Dawkins* controls the issue before us and should not be reconsidered. Mr. Glispie maintains that, in light of both the strong evidence that Illinois recognizes the limited-authority doctrine and our failure to consider that doctrine in *Dawkins*, we must revisit that decision.

---

( … continued)

intent to commit a crime themselves, but are "casing" the dwelling for another individual.

[20] *See supra* p.10.

In *Dawkins*, the petitioner had pleaded guilty to armed robbery and had been sentenced as a career offender under the ACCA on the basis of his prior carjacking and Illinois burglary convictions. Following his sentence, he sought permission to file a successive habeas petition on the basis of *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the ACCA's residual clause is unconstitutionally vague.[21] Dawkins maintained that burglary under Illinois law was broader than generic burglary; specifically, he submitted that Illinois required only an "entry without authority" which was broader than the "unlawful entry" required for generic burglary. *Dawkins*, 809 F.3d at 955. Because his Illinois burglary conviction was not encompassed by one of the specifically enumerated offenses in the ACCA, Dawkins continued, the now unconstitutional "residual clause" had to serve as the basis for designating his burglary as a violent felony under the ACCA. He therefore contended that he was sentenced under an unconstitutional statute and should have been granted permission to pursue habeas relief on that basis.

A divided panel of our court denied relief.[22] The majority held that Dawkins's petition did not implicate *Johnson* because Illinois burglary was not broader than generic burglary under the ACCA. The majority held that the elements of residential burglary under Illinois law were indistinguishable from the generic understanding of burglary: "Illinois

---

[21] *See supra* note 2.

[22] Dawkins's petition was submitted to the panel on the briefs, without the benefit of oral argument.

courts, like federal courts, use terms like unlawfully, unauthorized, without consent and without authority interchangeably[.]" *Id*. (collecting cases). Because Illinois burglary and generic burglary are materially indistinguishable, the sentencing court did not need to resort to the residual clause of the ACCA "to determine that Dawkins' prior conviction for burglary was a conviction for a crime of violence, for it was a conviction for 'burglary' as defined by the Supreme Court in the *Taylor* decision." *Id*. at 956.

The dissent believed, however, that the majority decision failed to undertake the elemental analysis required by the categorical approach. The dissent explained that *Descamps* required that, for a state burglary conviction to qualify as generic burglary, it must require "the 'element of breaking and entering or similar unlawful conduct.'" *Id*. at 957 (Ripple, J., dissenting) (quoting *Descamps*, 570 U.S. at 276). In light of the Supreme Court's decision in *Descamps*, the dissent perceived "two significant problems" in Dawkins's application for collateral relief that needed to be "examined by the district court in more detail." *Id*. First, it was unclear which Illinois burglary statute formed the basis for Dawkins's conviction—the burglary statute or the residential burglary statute. Second, neither statute had as an element "breaking and entering," *id*., and, indeed, the Supreme Court of Illinois had held that "a common-law breaking is no longer an essential element of the crime of burglary," *id.* at 958 (quoting *Weaver*, 243 N.E.2d at 248). In light of the language used in *Descamps*, the dissent believed that it was nec-

essary to reassess our prior assumption that Illinois burglary
qualified as generic burglary under the ACCA.[23]

We agree with Mr. Glispie that our reasoning in *Dawkins*
does not reflect the elemental analysis required by the cate-
gorical approach. Our consideration of the scope of the un-

---

[23] *Smith*, 877 F.3d 720, also addressed the issue whether a residential
burglary in Illinois qualified as generic burglary for purposes of the
ACCA. In *Smith*, the district courts had read *Dawkins* "as conclusively
establishing that residential burglary in Illinois satisfies *Taylor*." *Id*. at
722. We concluded otherwise: "[T]he only question addressed in *Dawkins*
was whether residential burglary in Illinois includes the element of
breaking and entering; we answered yes." *Id*. We went on to consider
whether the Illinois offense includes as an element "entering a 'building
or other structure'" as required by *Taylor*, 495 U.S. at 598. The defendants
had argued that, because Illinois residential burglary requires entry of a
"dwelling place of another," and dwelling place is defined as "a house,
apartment, mobile home, trailer, or other living quarters," the Illinois
statute is broader than the generic offense. *Smith*, 877 F.3d at 722–23
(quoting 720 ILCS 5/19-3(a) and 720 ILCS 5/2-6(b), respectively). We re-
jected that argument. We explained that *Taylor* "set out to create a federal
common-law definition of 'burglary'" and therefore "counsel[ed] against
reading its definition as if it were a statute." *Id.* at 723. In *Taylor*, we con-
tinued, the Court was attempting to get to a common understanding of
burglary. By the time *Taylor* was handed down, most states had amend-
ed their burglary statutes to cover trailers and mobile homes. We
thought "it unlikely that the Justices set out in *Taylor* to adopt a defini-
tion of generic burglary that is satisfied by no more than a handful of
states—if by any." *Id.* at 724. We concluded that "[p]eople live in trailers,
which are 'structures' as a matter of ordinary usage. Trailers used as
dwellings are covered by the Illinois residential-burglary statute. The
crime in 720 ILCS 5/19-3 therefore is 'burglary' under § 924(e)(2)(B)(ii).
Defendants were properly sentenced as armed career criminals." *Id*. at
725. *Smith*, therefore, did not rely, or build directly, upon our holding in
*Dawkins*.

authorized entry requirement began and ended with the ob-
servation that "Illinois courts, like federal courts, use terms
like unlawfully, unauthorized, without consent, and without
authority interchangeably[.]" *Dawkins*, 809 F.3d at 955. This
would be persuasive reasoning if the cases on which we
rested our analysis actually had considered the underlying
meanings of those terms. The bulk of the cases, however,
contained no such analysis; indeed, most compared other
elements of generic and statutory burglary or focused on a
different issue altogether. *See, e.g., United States v.
Ramirez-Flores*, 743 F.3d 816, 822–23 (11th Cir. 2014) (holding
that, given the lack of case law interpreting the South Caro-
lina burglary statute, it was not plain error for the court to
consider the statute divisible, and, applying the modified
categorical approach, the district court did not err in con-
cluding that the burglary conviction involved entry into the
victim's residence); *United States v. Constantine*, 674 F.3d 985,
990 (8th Cir. 2012) (rejecting defendant's argument that
"burglary" under the ACCA should be limited to residential
burglary), *abrogated on other grounds by United States v. McAr-
thur*, 850 F.3d 925 (8th Cir. 2017); *United States v. Bonilla*, 687
F.3d 188, 192–93 (7th Cir. 2012) (holding that, where defend-
ant had conceded that "all of the *Taylor* elements—unlawful
entry, of a building or other structure, and the requisite in-
tent to commit a felony"—were satisfied, the fact that, under
Texas law, the intent to commit a felony could be formulated
before or after the unlawful entry did not take it outside of
generic burglary).

The two cases on which we relied in *Dawkins* and that
did address the scope of "unauthorized" and "unlawful" en-
tries raise serious questions about the validity of our analyti-
cal approach in *Dawkins* and suggest that we need to consid-

er carefully Mr. Glispie's submission. In *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001), the defendant had argued that a prior conviction for burglary under South Dakota law did not qualify as generic burglary because the statute "omits any reference to the required entry being unlawful or unprivileged." *Id.* at 1196. The Ninth Circuit acknowledged that there was "no mention of the lawfulness of the entry" in the text of the statute and that it therefore appeared that the statute fell outside the generic definition of burglary. *Id*. It noted, however, that the Supreme Court of South Dakota had interpreted the statute to include "the element of 'unlawful or unauthorized entry,'" separate from the element of intent, which brought it within the generic definition. *Id.* Similarly, in *United States v. Lujan*, 9 F.3d 890 (10th Cir. 1993), the defendant had argued that an "unauthorized entry" required for his New Mexico burglary conviction could "mean anything and d[id] not necessarily rise to the level of unlawful or unprivileged entry" required for generic burglary. *Id*. at 892. The Tenth Circuit noted that, in *Taylor*, the Court had relied on the Model Penal Code definition of burglary, which reads: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, *unless the premises are at the time open to the public or the actor is licensed or privileged to enter*." *Id*. (internal quotation marks omitted). Under New Mexico law, however, a person was not guilty of burglary if he merely "enter[ed] a store open to the public with intent to … commit larceny." *Id*. (internal quotation marks omitted). "Thus," the court concluded, "'unauthorized entry' as used in the New Mexico burglary statute and in Mr. Lujan's indictment necessarily

ha[d] the same meaning as 'unlawful or unprivileged entry' in *Taylor*[.]" *Id*.

In sum, when issues concerning the scope of "unlawful or unprivileged entry" were raised in these cases, the courts critically assessed the scope of the relevant state law before determining that the generic element was satisfied. *Dawkins* does not contain the rigorous elemental analysis found in these two cases. We are confident, moreover, that had we undertaken that same critical analysis in *Dawkins* as our sister circuits did in *Tighe* and *Lujan*, we would have ended up where we are today: facing the critical question whether, under Illinois law, the limited-authority doctrine applies to residential burglary, effectively collapsing the "unauthorized entry" and "intent to commit … a felony" requirements, and taking it outside of the definition of generic burglary.

As we have noted, we believe that Illinois case law, as well as its principles of statutory interpretation, generally point to the conclusion that the Supreme Court of Illinois would apply the limited-authority doctrine to the residential burglary statute. However, Illinois appellate courts have not been unanimous in their extension of this doctrine to residential burglary,[24] and application of the doctrine may affect the interpretation of other sections of the Illinois residential-burglary and home-invasion statutes.[25] "Certification of a controlling issue of state law to the highest court of the state is one method of reducing the possibility of error" in trying to predict what course the state supreme court might choose.

---

[24] *See supra* note 14.

[25] *See supra* note 19.

*See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 638 (7th Cir. 2002).

Circuit Rule 52 provides that

> [w]hen the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified.

Certification to the Supreme Court of Illinois is proper when "there are involved in any proceeding before [the Seventh Circuit] questions as to the law of this State, which may be determinative of the said cause, and there are no controlling precedents in the decisions of this court." Ill. S. Ct. R. 20(a). Here, the question whether the limited-authority doctrine applies to residential burglary will determine whether the district court erred in sentencing Mr. Glispie as a career offender. No controlling precedent of the Supreme Court of Illinois answers this question. We therefore respectfully ask the Supreme Court of Illinois to answer the question whether, and if so under what circumstances, the limited-authority doctrine applies to its residential burglary statute, 720 ILCS 5/19-3.

The Clerk of this Court will transmit the briefs and appendices in this case, together with this opinion, to the Supreme Court of Illinois. On the request of that Court, the

Clerk will transmit all or any part of the record as that Court so desires.

QUESTION CERTIFIED